IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )
v.                              )          No. 3:25-CR-48-TAV-DCP
                                )
BRYAN HARDISON,                 )
                                )
                Defendant.      )

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation as may be appropriate. This case is before the undersigned on Defendant Hardison's pro se Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 73] and two motions for leave [Docs. 114 & 119] to file untimely motions to suppress evidence [Docs. 115 & 118]. Defendant Hardison is charged with two counts of possession of controlled substances on May 5, 2025 [Doc. 8 p. 1]. These charges arise out of the search of his residence pursuant to a state search warrant [Doc. 1 p. 3]. Defendant argues for dismissal of the Indictment against him asserting this Court lacks jurisdiction because the charges arise out of a state investigation [Doc. 73]. He also requests leave to file two motions to suppress evidence in his case although the pretrial motions deadline has long expired [Docs. 114 & 119].

After reviewing the parties' arguments and the relevant law, the undersigned concludes Defendant raises no valid basis to dismiss the Indictment against him, and Defendant's suppression motions are untimely without good cause to permit their review. Moreover, Defendant's suppression motions lack merit, even if permitted. Accordingly, the undersigned recommends the

District Judge **DENY** Defendant's motions [Docs. 73, 114, 115, 118, & 119] as untimely and/or meritless.

## I.     BACKGROUND

On May 5, 2025, officers with the Knoxville Police Department's ("KPD") Organized Crime Unit ("OCU") executed a search warrant at Defendant Hardison's address [Doc. 1 p. 3]. Based upon the affidavit of KPD Detective Brandon Stryker ("Detective Stryker"), which lists controlled substances seized from Defendant's residence, the undersigned issued a Criminal Complaint charging Defendant with possession of 280 grams or more of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) [*Id.* at 1].

On May 7, 2025, a Grand Jury charged Defendant Hardison by Indictment with possession with intent to distribute 280 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count One) and possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine (Count Two) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) [Doc. 8 p. 1].

At Defendant's May 6, 2025 initial appearance on the Criminal Complaint, the undersigned appointed Assistant Federal Defender Jonathan Moffatt and the Federal Defender Services of Eastern Tennessee as counsel [*see* Doc. 4, Minutes], and entered an Order of appointment [Doc. 11] on May 14, 2025, at Defendant's initial appearance and arraignment on the Indictment. At that time, the Court set a deadline for pretrial motions of June 10, 2025 [Doc. 10, Minutes]. On June 10, 2025, Attorney Moffatt moved to continue the trial and pretrial motion deadline, stating as grounds that he met with Defendant on discovery but recently received additional discovery, and he needs time to meet with Defendant on his research relating to pretrial motions "and other

matters involving the discovery" [Doc. 17 ¶ 1]. The undersigned granted this motion and extended the pretrial motion deadline to July 17, 2025 [Doc. 18 p. 2].

In mid-July 2025, Defendant retained Attorneys Gregory P. Isaacs and Ashlee B. Mathis, of the Isaacs Law Firm, who filed a Notice of Appearance [Doc. 19], but they subsequently withdrew their Motion for Substitution of Counsel due to their discovery of a potential conflict of interest [Doc. 21]. Attorney Moffatt, who remained counsel of record [Doc. 24], moved to reopen and extend the pretrial motion deadline for four weeks [Doc. 26 p. 1].[1] The motion relates that the pretrial motion deadline inadvertently expired during the time retained counsel entered an appearance and then withdrew it [*Id*. at 1–2]. Attorney Moffatt stated that he and Defendant agree that pretrial motions, specifically two motions to suppress evidence, should be filed but additional time is needed to complete investigation of the issues and confer with Defendant [*Id*.]. The motion also states that prior to Defendant retaining counsel, Attorney Moffatt "intended to review, with the assistance of staff, approximately 1,200 hours of pole cam[era] video prior to drafting the [suppression] motions and this review was yet to occur" [*Id*. at 1]. The Court granted this motion and reopened and extended the pretrial motion deadline to August 14, 2025 [Doc. 27].

On July 23, 2025, Defendant filed a pro se motion requesting substitute counsel, contending that defense counsel has not met with him on discovery, defense strategy, or the case law in support of pretrial motions [Doc. 28 p. 1]. Defendant also sent a letter to the court reiterating these points [Doc. 29 p. 1]. Defense counsel filed a Motion to Review Attorney/Client Relationship

---

[1]     Defendant also filed a pro se "Notice and Request" asking to extend the pretrial motion deadline to allow him to file a suppression motion alleging a Fourth Amendment violation [Doc. 22 p. 2]. The undersigned denied this motion because "Defendant is not permitted to file motions in his own behalf while represented by counsel. E.D. Tenn. L.R. 83.4(c)" [Doc. 25]. The Court directed counsel to review the pro se filing, confer with Defendant, and file a motion if appropriate [*Id*.].

[Doc. 31] on July 29, 2025. On August 6, 2025, Attorneys Wade V. Davies and Georgia A. Miller of the Davies Law Firm, PLLC, entered a Notice of Appearance as counsel of record for Defendant Hardison, stating Defendant retained them after the filing of Attorney Moffatt's Motion to Review Attorney/Client Relationship [Doc. 32]. Attorney Davies simultaneously filed a Motion to continue the trial and the pretrial motion deadline "to provide new counsel the adequate time to obtain and review discovery, discuss the case with the client, and provide effective assistance of counsel in the preparation of any pretrial motions" [Doc. 33 p. 1].

On August 7, 2025, the Court substituted Attorneys Davies and Miller as Defendant's counsel of record [Doc. 34]. Just days later, on August 11, 2025, Defendant filed a pro se motion seeking a *Franks* hearing and suppression of evidence obtained as a result of the search warrant for his residence [Doc. 35]. Defendant alleged the affidavit in support of the search warrant omits information on a confidential informant's bias, lacks independent corroboration of the informant's tips, mischaracterizes observations during surveillance, and lacks a return or inventory, which raises concerns about the search warrant's [*Id*. pp. 2–3]. The Court denied the motion, instructing Defendant that he must file all motions through counsel and directing counsel to confer with Defendant about his pro se filing [Doc. 36 pp. 1–2]. The Court also granted a trial continuance and extended the pretrial motion deadline to September 15, 2025 [Doc. 37 pp. 2–3].

On August 17, 2025, Attorneys Davies and Miller filed a motion to withdraw as counsel [Doc. 38], which the Court granted after hearing on August 25, 2026 [Doc. 39]. At the August 25 hearing, Defendant initially expressed his desire to represent himself, but the Court asked that he accept appointed counsel to further discuss his case and take time for thoughtful consideration of his request to proceed pro se [Doc. 51 p. 2 n.4]. The Court appointed Criminal Justice Act ("CJA") panel attorney Laura Davis as counsel of record for Defendant [Doc. 42 p. 2].

Shortly after this substitution, Attorney Davis filed an Unopposed Motion to Continue Trial and All Associated Deadlines and a Motion for *Faretta* Hearing [Doc. 48, 49]. Following a *Faretta* hearing on September 11, 2025, the undersigned found Defendant knowingly and voluntarily waived his right to counsel and permitted Defendant Hardison to represent himself [Doc. 51 pp. 3–4, 6]. The Court also extended the pretrial motion deadline to October 9, 2026 [*Id*. at 7].[2] On October 1, 2025, Defendant moved to again extend his pretrial motion deadline to allow him to complete review of discovery with his investigator and to prepare pretrial motions [Doc. 61 p. 1]. The Court found a short extension of the pretrial motion deadline was appropriate and extended the deadline to October 23, 2025 [Doc. 62 p. 2]. On October 16, 2026, Defendant moved for a sixty-day extension of his pretrial motion deadline to complete review of the pole camera video footage, to review "digital copies of content of four cell phones," and to prepare pretrial motions [Doc. 68 pp. 1–3]. The undersigned denied this sixth request to extend the motion deadline, finding "Defendant has had ample time to file a pretrial suppression motion, particularly a motion based upon the search of his residence pursuant to a search warrant" [Doc. 96 p. 4]. The Court observed that Defendant does not allege continued review of the pole camera footage relates to an intended suppression motion but, nevertheless, held that "if Defendant subsequently discovers a pretrial motion that he could not have previously filed by the deadline, he may move for leave to file the motion" demonstrating good cause [*Id*.]. Throughout the proceedings, the Court extended the pretrial motion deadline five times at Defendant's request [Docs. 18, 27, 37, 51, & 62]. The last deadline for pretrial motions expired on October 23, 2025 [Doc. 62].

---

[2]     On August 29, 2025, Defendant filed a pro se motion to extend the pretrial motion deadline to allow him to "investigate a [Fourth] Amendment violation to file a motion to suppress" [Doc. 45 p. 1].

On October 23, 2025, Defendant timely filed a pro se motion to dismiss for lack of subject matter jurisdiction arguing his case is improperly before this Court [Doc. 73]. Specifically, Defendant states after his arrest, which followed the search of his residence pursuant to a state search warrant, the state law enforcement officials who searched his residence did not take Defendant before the nearest available state magistrate judge of the county in which the offense occurred but, instead, initiated federal criminal proceedings [*Id.* at 4]. Defendant demands release because he is detained federally and claims the Court did not acquire jurisdiction or afford him due process in exercising jurisdiction over him [*Id.* at 6]. Defendant alleges when he was arrested, the state officers did not comply with Tennessee rules of criminal procedure, which Defendant says required him to be taken before the nearest approved magistrate judge of the county [*Id.* at 4]. Instead, Defendant contends the state officers initiated federal criminal proceedings, which violated his constitutional right to due process [*Id.* at 4–5]. Defendant further alleges the imposition of federal charges against him deprived him of the opportunity to challenge the search warrant that led to the search of his residence and his arrest [*Id.* at p. 7, Doc. 87 p. 3].

The Government responds that the Court has jurisdiction over Defendant and the charged violation of federal drug laws because a federal district court has original jurisdiction over federal offenses [Doc. 79 p. 1]. The Government also contends Defendant had the opportunity to challenge the search warrant through the pretrial motion process [*Id.*]. Defendant replies that because the search warrant was executed by a state law enforcement officer, he believes the county court has "exclusive original jurisdiction," and because this Court lacks subject matter jurisdiction, his federal prosecution must be dismissed [Doc. 87 pp. 2, 5].

On December 5, 2025, Defendant file a Motion to Leave to File Late Filed Pre-Trial Motion [Doc. 114] along with his proposed Motion to Suppress Evidence Seized in Violation of the Fourth

Amendment in Addition the Defendant Requests for a *Franks* Hearing [Doc. 115]. In his first motion for leave, Defendant argues good cause exists for his untimely motion to suppress because he now represents himself and has been diligently working on his case and defense strategy [Doc. 114 ¶¶ 2–3]. Defendant also states that he was "prohibited" from filing timely pretrial motions [*Id.* ¶¶ 2, 5]. Defendant further supports his contention of good cause by outlining obstacles arising after he decided to represent himself, including elbow counsel's refusal to review the pole camera footage with him and delays caused by awaiting funding for a private investigator, his investigator awaiting  discovery from elbow counsel, and the need to apply for additional funding for his investigator to complete the review of the pole camera footage [*Id.* ¶ 3]. He also claims the Government has not turned over discovery needed "to fully support" Defendant's motion to suppress [*Id.* ¶ 6].[3] Finally, Defendant states his case is complex for a pro se Defendant with complicated discovery and issues in his case [*Id.* ¶ 8].  He argues that he will suffer great prejudice if not permitted to bring his late suppression motion because a favorable ruling would eviscerate the Government's case against him [*Id.* ¶ 4]. Conversely, he maintains that litigation of the late suppression motion will not prejudice any other party, nor will it affect the trial date [*Id.* ¶ 6].

Finally, on December 11, 2025, Defendant filed a Motion to Leave and File Late Filed Pre-Trial Motion to Suppress Statements Due to Violation of the McNabb Rule Pursuant to Rule 5(a) of the Federal Rules of Criminal Procedure by Brian Hardison [Doc. 119] along with his proposed Motion to Suppress Statements Due to Violation of the McNabb Rule [Doc. 118].[4] In his second

---

[3]    Defendant's claims regarding the Government's failure to provide discovery are the subject of several other motions pending before the undersigned [Docs. 56, 57, 63, 64, 70, 93, 94, 95, & 105].

[4]    It appears the motion for leave [Doc. 119] and proposed motion to suppress [Doc. 118] were docketed out of order.

motion for leave, Defendant's stated good cause for the late-filed motion to suppress statements is that while reviewing discovery after the pretrial motion deadline expired, he "had an epiphany of the speedy arraignment provisions of the federal laws" [Doc. 119 pp. 2, 5]. Defendant attributes his failure to review discovery prior to the expiration of the pretrial motion deadline to elbow counsel's refusal to review discovery with him, which he characterizes as technical assistance and which he says has been "detrimental" to his defense [*Id.* at 2–3]. Defendant also asserts elbow counsel interfered with reviewing pole camera footage before the deadline by delaying the provision of discovery to his investigator, who ultimately required additional funding [*Id.* at 4–5].[5]

The Government submitted one response addressing both of Defendant's motions for leave [Doc. 128]. It argues Defendant Hardison's motions should be denied because all the claims he seeks leave to raise could have been raised prior to the expiration of the pretrial motion deadline [*Id*. at 3]. Additionally, the Government contends Defendant fails to show good cause because he had sufficient time to file any pretrial motions prior to the deadline [*Id.* at 4–5].

Defendant Hardison replied with a timeline of his case, including his attempt to file a pro se motion for a *Franks* hearing while represented by counsel [Doc. 137 p. 2]. His reply also reiterates his need for additional time to prepare [*Id.* at 6]. Additionally, Defendant argues he was prejudiced by the Government and the Court's "disregard" of his request to extend the pretrial motion deadline [*id.* at 4], and that his late filing will have no effect on the Government and only "a sparce impact" on the Court, while furthering "the appearance of justice" [*Id.* at 8].

The matter is now ripe for adjudication.

---

[5]      In addition to his good cause arguments, Defendant veers into substantive argument on the motion to suppress and his allegations of violation of Federal Rule of Criminal Procedure 5's prompt presentment requirement [*See* Doc. 119 pp. 5–9]. But such argument is appropriate for a motion to suppress, not in support of good cause to file an untimely motion.

8

## II.    ANALYSIS

Defendant Hardison moves the Court to dismiss the Indictment for lack of subject matter jurisdiction [Doc. 73]. Defendant also moves the Court for leave [Docs. 114 & 119] to file two untimely motions to suppress, filing both proposed motions [Docs. 115 & 118]. Here, the deadline for filing pretrial motions expired on October 23, 2025 [Doc. 62 p. 2], and the proposed suppression motions were filed on December 5 and 11, 2025, more than a month after the motion deadline expired.

For the reasons discussed herein, Defendant raises no valid basis to dismiss the Indictment. Additionally, Defendant's pretrial motions are untimely, and Defendant has not demonstrated good cause to permit the late motions, which even if considered, are meritless. Accordingly, the undersigned recommends that Defendant's motions be denied.

### A.    Jurisdiction

Defendant Hardison moves this Court to dismiss the Indictment based on lack of subject matter jurisdiction [Doc. 73]. Defendant contends that because state officials initiated the search and investigation leading to his arrest, his charges should be adjudicated in state court [*Id*. at ¶ 8].

The "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The Indictment charges Defendant with conspiring to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) and (B) [Doc. 8 p. 1]. "'[D]rug trafficking is an "economic enterprise" that substantially affects interstate commerce in numerous clear ways' and is an 'activity that the federal government clearly may regulate.'" *United States v. Fonseca*, 193 F. App'x 483, 492 (6th Cir. 2006) (citation omitted). This Court unquestionably has jurisdiction over this case. *See United States v. Pryor*, 842 F.3d 441, 447–48 (6th Cir. 2016) (holding the

defendant "was charged under 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1), federal statutes properly passed by Congress that provide this court with federal-question subject-matter jurisdiction" (citation omitted)). Despite state officials conducting the investigation and the search leading to Defendant's federal charges, the case is properly before this Court as the Indictment charges Defendant with violating federal law [*See* Doc. 8 p. 1], thus putting Defendant squarely within the jurisdiction of this Court.

Defendant also argues the state law enforcement officers who arrested him should have complied with Tennessee criminal procedure and taken him before a state magistrate judge after his arrest, but Defendant was, instead, charged with a federal offense [Doc. 73 ¶ 4]. Where, as here, a federal criminal complaint initiated Defendant's prosecution, federal criminal procedure applies. *See, e.g. United States v. Wright*, 16 F. 3d 1429, 1434 (6th Cir. 1994) ("The fact that Tennessee law 'may ... require greater protection against searches and seizures than the fourteenth amendment is of no avail to a defendant in federal court, under prosecution for a federal crime.'" (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)). And Defendant did appear before the undersigned for an initial appearance and arraignment on May 6, 2025, a day after the execution of the search warrant and Defendant's arrest [Doc. 4, Minutes]. Finally, Defendant's argument that the federal indictment divested his right to challenge the search warrant authorizing the search of his residence is also without merit. Defendant and his counsel received notice of his deadline for filing pretrial motions, including motions to suppress, at his May 14, 2025 initial appearance and arraignment on the Indictment [Doc. 10, Minutes; *see also* Doc. 14 p. 4]. Thus, the Court's exercise of jurisdiction over Defendant did nothing to hamper his ability to challenge the underlying search warrant in his case.

Because Defendant Hardison's Indictment charges violations of federal law, this Court has subject matter jurisdiction over him.

## B. Suppression of Evidence

Defendant seeks to file a motion to suppress evidence seized from his residence pursuant to a search warrant [Doc. 115] and a motion to suppress his statements [Doc. 118]. He argues that good cause exists to permit him to file these motions after the expiration of the motion deadline. The undersigned first examines Defendant's allegations of good cause and then turns briefly to the merits of the motions.

### 1. Untimeliness

Federal Rule of Criminal Procedure 12(c) explains the Court may "set a deadline for the parties to make pretrial motions," and a motion is untimely if a party "does not meet the deadline." Fed. R. Crim. P. 12(c)(1) and (3). The Court may utilize its discretion and consider the motion "if the party shows good cause." *Id.* Good cause under Federal Rule of Criminal Procedure 12(b)(3)(C) is "heavily dependent on the facts of the particular case." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010). To demonstrate good cause, a party must give "'some legitimate explanation'" for the untimely filing. *United States v. Burrell*, 114 F.4th 537, 547 (6th Cir. 2024) (quoting *Walden*, 625 F.3d at 965). It is a "flexible standard requiring an explanation for both the delay and the potential prejudice." *United States v. Trujillo-Molina*, 678 F. App'x 335, 337 (6th Cir. 2017) (citation omitted & modified). When determining the potential prejudice from a late-filed motion, the Court considers "all interests in the particular case," including those of the Court and the public. *Id.* at 339 (citation omitted & modified).

Here, the Court set the pretrial motion deadline of October 23, 2025, after several extensions [Doc. 62 p. 2]. The original pretrial motion deadline was June 10, 2025 [Doc. 14 p. 4].

11

Defendant first requested a motion extension in June, which the Court granted to reset the deadline to July 17 [Doc. 18 p. 2]. The undersigned granted a second request to continue the pretrial motion deadline in July, reopening the deadline and extending it to August 14 [Doc. 27]. Upon receiving new counsel in August, Defendant, again, requested an extension of the pretrial motion deadline [Doc. 33], which the Court granted, resetting the deadline to September 15 [Doc. 37 p. 3]. The Court extended the motion deadline twice, from September 15 to October 9, and again to October 23, while Defendant represented himself [Docs. 51 & 62]. In denying Defendant Hardison's sixth request to extend the deadline beyond October 23, the undersigned explained that if Defendant discovered a pretrial motion he could not have previously filed by the deadline, he may move for leave and show good cause for the belated filing [Doc. 96 p. 4].

On December 5 and 11, 2025, Defendant filed two motions for leave [Docs. 114 & 119] to file motions to suppress evidence [Docs. 115 & 118] beyond the deadline. Defendant asserts good cause exists to permit the untimely suppression motions because at the time the motion deadline expired, he was still reviewing discovery [Doc. 114 p. 2, Doc. 119 p. 4]. He asserts the failure to permit the late suppression motions would greatly prejudice him because he raises issues of constitutional import and suppression of the evidence would eviscerate the Government's case against him [Doc. 114 ¶ 4]. He alleges no other party would suffer prejudice from litigation of the motions at this juncture, nor would the April 21, 2026 trial date be affected [Doc. 114 ¶ 6].

In denying Defendant's sixth request to extend the pretrial motions deadline, the undersigned informed Defendant of his obligation to demonstrate good cause for any belated filing he could not have previously filed by the deadline, consistent with Federal Rule of Criminal Procedure 12(c)(3) [Doc. 96 p. 4]. Defendant Hardison's motions fail to show good cause for his untimely filing of his motions to suppress. While the Court acknowledges the difficulty of self-

representation, the Court cautioned Defendant that the rules would not be relaxed because of his decision to proceed pro se [*see* Doc. 51 p. 3]. The Court also explained to Defendant the role of elbow counsel [*see id.* at 4–5; *see also* Doc. 60 p. 2], so to the extent Defendant's explanation for his untimely filing rests on his frustration with his elbow counsel's failure to walk him through discovery, it does not amount to good cause.

As for Defendant Hardison's contention that he was "prohibited" from filing timely pretrial motions, to the extent Defendant's argument refers to the undersigned denying a pro se motion while he was represented [*see* Doc. 36], the Court reminds Defendant he was advised to make filings through counsel, not prohibited from filing motions to suppress or a motion for a *Franks* hearing. And even if Defendant Hardison attempted to convince his then-retained counsel to file pretrial motions on his behalf that were not ultimately filed, the law is clear that a lawyer's decision to not file a pretrial motion is insufficient to establish good cause. *See Walden*, 625 F.3d at 965. Similarly, any change in counsel, or Defendant's election to represent himself, is also insufficient to establish good cause for filing an untimely pretrial motion. *See United States v. Gulley*, 780 F. App'x 275, 283 (6th Cir. 2019).

Defendant's primary allegation in support of good cause is that he needed to complete review of discovery to determine whether he could file a motion to suppress [*see* Doc. 114 ¶ 2], which also is without merit. Defendant acknowledges reviewing pole camera footage with his investigator beginning on September 22, 2025. Although Defendant had not completed review of the pole camera video at the time his pretrial motion deadline expired, he seeks to challenge the affidavit providing the basis for the issuance of the search warrant leading to his arrest and indictment [*see* Doc. 115]. The search warrant affidavit is not new information to him discovered only after the expiration of the pretrial motion deadline. As demonstrated by Defendant's

arguments in his pro se Motion for a *Franks* Hearing [Doc. 35] filed in August 2025, Defendant was aware of and had access to the search warrant affidavit well before the motion deadline. Moreover, Defendant acknowledges that he received the search warrant affidavit and documents from elbow counsel prior to September 24, 2025 [Doc. 55 p. 1]. The drafting and filing of his motion for a *Franks* hearing [Doc. 35] reveals Defendant had all the information needed to file a motion to suppress based on a challenge to the search warrant for the search of his residence well before the expiration of the motion deadline.

In his proposed motion to suppress evidence seized pursuant to the search warrant, Defendant makes some specific challenges to the affidavit based upon the pole camera evidence. Defendant argues the pole camera footage does not support the affidavit's statements that several people would come and go from the residence, that people would arrive and retrieve items from the grill before leaving, that he placed items in the grill, or that he left the residence and traveled directly to the controlled buy and back [Doc. 115 pp. 20, 32]. The Government argues that the availability of this argument is apparent from a review of any portion of the pole camera recordings [Doc. 128 p. 5]. The Court agrees with the Government that Defendant would have been able to make these arguments by the motion deadline even though he had not completed review of the pole camera footage.

With regard to his motion to suppress statements, Defendant asserts that he came to the realization that the delay in presentment was a basis for suppressing his statements, while reviewing pole camera footage with his investigator after the expiration of the motion deadline [Doc. 119 pp. 4–5]. As the Government points out [*see* Doc. 128 pp. 1, 5], however, Defendant had all the information to make this motion (knowledge of the time of his arrest, knowledge of the time of his initial appearance before this Court, and access to the recording of his statement

14

provided in initial discovery) well before he started representing himself. Moreover, Defendant demonstrated an awareness of the law relating to this issue before he began representing himself because he quoted Federal Rule of Criminal Procedure 5(a)(1) in the supplement to his pro se Motion for a *Franks* Hearing, filed on August 11, 2025 [Doc. 35-1 p. 1]. Accordingly, Defendant demonstrates no basis why he could not have timely filed his suppression motions. On this basis alone, Defendant's motions for leave should be denied.

In considering good cause, the Court also examines the potential prejudice from a late-filed motion. *See Trujillo-Molina*, 678 F. App'x at 337. Here, Defendant claims he suffers prejudice if the pretrial motion deadline is not extended [Doc. 114 ¶ 4]. Defendant argues his pretrial motions raise matters of constitutional import, but Rule 12(c)(1) permits the Court to set a pretrial motion deadline for all pretrial motions, including motions to suppress evidence. *See also* Fed. R. Crim. P. 12(b)(2) (observing only a "motion that the court lacks jurisdiction may be made at any time while the case is pending"). In examining potential prejudice to the Government, as it highlights in the Response, continuous extensions of a deadline for a party to file motions regarding issues known months earlier undermines its ability to aptly allocate resources. And the Court, likewise, has "a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases." *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009). Here, the Court granted five extensions of the pretrial motion deadline to permit Defendant to file a motion to challenge the search of his residence, a motion Defendant knew he wanted to file at least a month before he began representing himself. Thus, Defendant fails to demonstrate prejudice amounting to good cause.

Defendant's reasons for delay in filing his pretrial motions do not amount to good cause.

### 2. Merits

Even if the Court permitted Defendant's untimely suppression motions, they lack merit. Defendant seeks to suppress evidence seized during the execution of a search warrant at his residence because the affidavit in support of the search warrant fails to provide probable cause [Doc. 115 p. 8].[6] Specifically, he alleges the affidavit fails to provide a nexus between the alleged drug trafficking and the residence [*Id.* at 14]. He also contends that the affidavit does not contain information on the reliability and credibility of the two confidential informants [*id.* at 8–11, 14, 17–19], nor does it contain independent police corroboration of the information from the informants [*id.* at 20]. Defendant also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), asserting that the affiant intentionally or recklessly included false information or omitted information that is material to probable cause [*id.* at 11, 30]. Defendant contends the affidavit contains the following false statements: that he put a small item or items on a grill [*id.* at 32] and that officers showed the informant a six-photo lineup [*id.*]. He enumerates the following alleged material omissions: that the confidential informant was untested and biased to avoid criminal liability [*id.* at 11]; that the integrity of the controlled buys was compromised because a female officer was not present to search the confidential informant, whom he surmises was a female [*id.* at 11–12];[7] that Defendant lived at the residence [*id.* at 14–15]; that Officer Jinks, who was involved in the investigation, previously presented false information in a prior affidavit [*id.* at

---

[6]     Defendant's Motion to Suppress Evidence Seized in Violation of the Fourth Amendment in Addition the Defendant Requests for a Franks Hearing [Doc. 115] is thirty-nine pages long and, thus, violates Local Rule 7.1(b), which sets a limit of twenty-five pages for motions. E.D. Tenn. L.R. 7.1(b).

[7]     Defendant also argues that there are no audio or video recordings of the controlled buys, contests that CS-1 used marked "buy money," and asserts that CS-1's calls to set up the transactions were not recorded [Doc. 115-1 p. 27].

16

16]; that the pole camera does not show customers entering and exiting the residence or Defendant leaving the residence before the two controlled buys [*id*. at 20, 34];[8] that the officers did not see Defendant carrying items from the residence or placing items in a charcoal grill [*id*. at 21, 34]; the exact dates and times that officers received information from a human source, began electronic surveillance, and conducted the traffic stop of CS-1 [*id*. at 33]; information about the training of the drug dog at the traffic stop [*id*. at 34]; and that the pole camera shows CS-1's vehicle leaving the residence and the officers were dispatched to stop it [*id*.].[9] [10]

Detective Stryker submitted a five-page affidavit in support of the issuance of a search warrant for 5205 Skyline Drive ("the residence"), which the affidavit states is the "premises occupied by or under the control of" Defendant [Doc. 115-1 p. 7]. The affidavit alleges as follows: In late 2024, a "human source" informed law enforcement that Defendant was selling cocaine and

---

[8]    Defendant acknowledges that "[t]he pole camera at most shows an alleged drug transaction which shows the Defendant leave but not come back until 4:57 minutes later after an alleged drug transaction" [Doc. 115 p. 23].

[9]    Defendant also alleges that the warrantless installation of a pole camera with zoom capability for a six-week period violated the Fourth Amendment [Doc. 115 pp. 25–26]. Not so. Defendant "had no reasonable expectation of privacy in video footage recorded by a camera that was located on top of a public utility pole and that captured the same views enjoyed by passersby on public road." *United States v. Houston*, 813 F.3d 282, 287–88 (6th Cir. 2016) (analyzing a ten-week surveillance of the defendant's residence with a pole camera).

[10]    Defendant also asserts that Detective Stryker voided the oath in support of the affidavit by striking out Detective Austin Jordan's name on the search warrant and inserting his own after the search warrant was issued and either before or after execution [*Id*. at 29]. The copy of the search warrant attached to Defendant's motion shows that the name Austin Jordan is stricken and Detective Stryker handwritten underneath, as the officer to whom the issuing judge, Knox County Criminal Court Judge Scott Green, delivered the search warrant. The search warrant bears the initials of the issuing judge beside the alteration. Also, the issuing judge witnessed Detective Stryker swear to the affidavit [*See* Doc. 115-1 p. 10]. The Court finds the alteration on the search warrant was made by the issuing judge and does not impact the validity of either the search warrant or the affidavit in support thereof.

resided at the residence [*Id.* at 8 (¶ 2)].[11] Detective Stryker knew Defendant from his prior contacts with police and knew he had prior convictions for cocaine distribution [*Id.* at 8 (¶ 2)]. In March 2025, law enforcement conducted live and video surveillance of the front of the residence and observed multiple different vehicles coming to the residence daily and their occupants entering the residence for a short time and then leaving [*Id.* at 9 (¶ 3)]. Based upon his training and experience, the affiant states this behavior is consistent with drug transactions occurring in the residence [*Id.* at 9 (¶ 3)]. Surveilling officers have also observed Defendant placing a small item in a charcoal grill on the front porch and, a short time later, an individual arrives by car, retrieves the item from the grill, and drives away [*Id.* at 9 (¶ 4)]. Officers have also observed Defendant leaving the residence in a vehicle and returning a short time later "throughout the day," which the affiant knows is consistent with drug sales [*Id.* at 9 (¶ 4)].

The affidavit further relates that in April 2025, officers conducted a traffic stop on an individual and seized crack cocaine and a glass crack pipe from the person's vehicle [*Id.* at 9 (¶ 5)]. The driver, referred to in the affidavit as "CS-1," said he or she bought the crack cocaine from a light-skinned, heavy-set black male, who lives at the residence [*Id.* at 9 (¶ 5)]. CS-1 identified Defendant from a six-photo lineup as the person from whom he or she bought crack cocaine and who lives at the residence [*Id.* at 9 (¶ 5)]. The affidavit states that since April 2025, the affiant made "at least two" controlled buys of crack cocaine from Defendant using CS-1 [*Id.* at 9 (¶ 6)]. For each controlled buy, officers searched CS-1 and CS-1's vehicle for contraband an money, had CS-1 call Defendant to arrange a meeting to purchase crack cocaine, follow CS-1 to the meeting with Defendant where CS-1 exchanged marked funds for drugs, and then follow CS-1 to another

---

[11]    Defendant attaches a copy of the affidavit and other exhibits to his motion [Doc. 115-1]. The undersigned will cite to the page number of the collective exhibits and will reference the specific paragraph in a parenthetical when available.

location to retrieve the drugs [*Id*. at 9 (¶ 6)]. For both controlled buys, surveilling officers followed Defendant from his residence to the meeting location and directly back to the residence, while "maintaining constant visual surveillance of [Defendant]" [*Id*. at 9 (¶ 6)]. On both occasions, the rock-like substance that CS-1 purchased from Defendant field-tested positive for cocaine base [*Id*. at 9 (¶ 6)]. Within seventy-two hours of applying for the search warrant, Detective Stryker conducted another controlled purchase of crack cocaine from Defendant using CS-1 and the same procedures as the prior controlled buys [*Id*. at 9–10 (¶ 7)]. In all the controlled buys, the affiant and surveilling law enforcement corroborated all information from CS-1, and the affiant states that CS-1 has never provided unreliable or inaccurate information to him [*Id*. at 10 (¶¶ 8–9]. Based upon his training and experience, Detective Stryker knows that drug traffickers keep a supply of drugs and paraphernalia at the residence [*Id*. at 10 (¶ 10)].

The Fourth Amendment protects individuals against unreasonable searches or seizures of "their persons, houses, papers, and effects[.]" U.S. Const. amend IV. It requires that law enforcement have probable cause and obtain a search warrant before searching a residence. *Collins v. Virginia*, 584 U.S. 586, 593 (2018) ("At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (citation omitted & modified)). Here, law enforcement obtained a search warrant for Defendant's residence based upon the affidavit of Detective Stryker.

Defendant challenges probable cause, contending the credibility and reliability of the confidential informants is not stated, nor did the officers perform substantial corroboration of the information from the informants. "[A search] warrant affidavit need not include such attestations [of the informant's reliability] if it sufficiently details a controlled buy that supports the informant's credibility." *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021). Here law enforcement

19

conducted multiple controlled buys of crack cocaine from Defendant, which substantially corroborates CS-1's information that he or she bought the crack cocaine from Defendant that was subsequently seized from CS-1's car at the time of the traffic stop.

Moreover, Defendant alleges the affidavit establishes no connection between the residence and drug trafficking. But officers maintained continuous visual surveillance of Defendant as he traveled directly from the residence to the controlled drug transaction and then directly back to the residence. "Evidence that one leaves a 'residence, engage[s] in a drug transaction, and then return[s] into the residence' 'plainly demonstrate[s] a sufficient nexus' with the location." *United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (citations omitted). And only a single instance of a defendant leaving a residence, completing a drug transaction, and returning to that residence is sufficient for a finding of probable cause. *United States v. Florence*, No. 24-3729, 2025 WL 2539022, at *2 n.1 & *3 (6th Cir. Sept. 4, 2025) (noting that in *Sanders*, "the officers' observation of [the defendant] leaving his residence, completing a single drug transaction, and returning to a residence was enough for the *Sanders* court to find probable cause to search that residence" (citing *Sanders*, 106 F.4th at 463)).

Defendant's remaining arguments, including his *Franks* allegations, are likewise unavailing. While it is true the affiant could have included other information in the affidavit, such as specific allegations that law enforcement had not used CS-1 as an informant prior to the traffic stop or that neither informant mentioned seeing drugs inside the residence [Doc. 115-1 p. 18], the Court judges a supporting affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Here, the information contained in the affidavit about the controlled buys was sufficiently detailed to suggest there was a "fair probability" that evidence of drug trafficking

20

would be found at the residence. *See United States v. Ray*, 803 F.3d 244, 277 (6th Cir. 2015) (while acknowledging that "corroboration would [have been] stronger" with additional facts, the details that were provided were sufficient to support a probable cause finding).

Nor does Defendant make the required substantial, preliminary showing that the affidavit contains material omissions to warrant a *Franks* hearing. To warrant a *Franks* hearing, a defendant "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (quoting *Franks*, 438 U.S. at 155–56). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155–56). Omissions, too, can form the basis for a *Franks* challenge, but "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Adkins*, 107 F.3d 1213, 1217 (6th Cir. 1997) (citation omitted). This is because an affidavit need not include all facts gathered over the course of an investigation. *Id.* Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).

Here, none of Defendant's alleged false statements or omissions are critical to the probable cause finding considering the multiple controlled buys. Defendant's most significant allegation— that the pole camera footage does not show Defendant leaving or returning to the residence before and after the controlled buys—is not material because the affidavit states the officers also conducted physical surveillance [Doc. 115-1 p. 9 (¶ 3)] and that they maintained "constant visual

surveillance of [Defendant] from the time he left the residence . . . until he arrived at the agreed upon location for the crack cocaine transaction" and while he returned from the location of the transaction to the residence [*id*. at 9 (¶ 3)]. Defendant fails to raise a basis for a *Franks* hearing.

Defendant also moves to suppress his statements he made to law enforcement more than six hours after he was arrested on the morning of May 5, 2025, during the execution of the search warrant at his residence and before his initial appearance on his federal charges on May 6, 2025 [Doc. 118 pp. 2–3]. He argues this delay in presentment violates 18 U.S.C. § 3501(c) and the *McNabb-Mallory* rule [*Id*. at 3–5]. Defendant contends the twenty-eight hours between his arrest and his initial appearance was "unreasonable" delay because the arresting officers could have taken Defendant before a county court at 2:00 p.m. on May 5 [*Id*. at 3].

Federal Rule of Criminal Procedure 5(a)(1)(A) requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." "[D]efendants' confessions [will] be deemed inadmissible at trial 'when obtained during unreasonable presentment delay.'" *United States v. Woodley*, 713 F. App'x 449, 455–56 (6th Cir. 2017) (quoting *Corley v. United States*, 556 U.S. 303, 307 (2009) (discussing *McNabb v. United States*, 318 U.S. 332 (1943)); *see also Mallory v. United States*, 354 U.S. 449, 455 (1957) (holding a defendant's confession inadmissible when given within seven of his arrest but prior to presentment and within the vicinity of several magistrates). "The principle that 'generally rendered inadmissible confessions made during periods of detention that violated the prompt presentment requirement of Rule 5(a)' thus came to be known as the *McNabb-Mallory* rule." *Woodley*, 713 F. App'x at 456 (quoting *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994)). Section 3501(c) modifies the *McNabb-Mallory* rule by "creat[ing] a six-hour 'safe harbor,' deeming any

delay of six hours or less between arrest and presentment reasonable enough that any confession given within that time frame will be admissible if 'made voluntarily and if the weight to be given the confession is left to the jury.'" *Id*. (quoting 18 U.S.C. § 3501(c)). When the defendant confesses more than six hours after arrest and before presentment, the court assesses whether the delay in bringing the defendant before the judge was "unreasonable or unnecessary" and, if it was, the confession must be suppressed. *Id*. (citing *Corley*, 556 U.S. at 332).

Here, according to Defendant, his statements to law enforcement officers were made more than six hours after his arrest on May 5 and before his initial appearance on May 6. "However, Sixth Circuit precedent holds that 'waiver of one's *Miranda* rights also constitutes a waiver under *McNabb-Mallory*,' meaning that '[a] valid *Miranda* waiver also waives the prompt judicial warning of one's constitutional rights.'" *Id*. (quoting *United States v. Barlow*, 693 F.2d 954, 959 (6th Cir. 1982)). The affidavit filed in support of the Criminal Complaint states that following the execution of the search warrant at his residence, law enforcement transported Defendant to the KPD OCU office for an interview [Doc. 1 p. 3]. Detective Stryker "advised [Defendant] about his Constitutional rights relating to *Miranda*, and he agreed to speak without legal representation" [*Id*.]. Because Defendant waived his *Miranda* rights before making a statement, his motion to suppress lacks merit.

## III. CONCLUSION

Defendant's pro se motion to dismiss for lack of subject matter jurisdiction [Doc. 73] is without merit, and Defendant fails to demonstrate good cause for his untimely suppression motions [*See* Docs. 114 & 119], which also lack merit. Accordingly, the undersigned respectfully **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [**Doc. 73**], Defendant's Motion to Leave to File Late Filed Pre-Trial

Motion [**Doc. 114**], Defendant's proposed Motion to Suppress Evidence Seized in Violation of the

Fourth Amendment in Addition the Defendant Requests for a *Franks* Hearing [**Doc. 115**],

Defendant's Motion to Leave and File Late Filed Pre-Trial Motion to Suppress Statements Due to

Violation of the *McNabb* Rule Pursuant to Rule 5(a) of the Federal Rules of Criminal Procedure

[**Doc. 119**], and Defendant's Motion to Suppress Statements Due to the Violation of the *McNabb*

Rule Pursuant to Rule 5(a) and the Fed. R. Cim. P. [**Doc. 118**].[12] The Clerk of Court is

**DIRECTED** to mail a copy of this Report and Recommendation to Defendant Hardison at his

place of detention.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[12]    Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide de novo review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

24