IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )        No. 3:25-CR-48-TAV-DCP
v.                                  )
                                    )
BRYAN HARDISON,                     )
                                    )
                Defendant.          )

**MEMORANDUM AND ORDER**

All pretrial motions are referred to the undersigned for disposition or recommendation as appropriate. 28 U.S.C. § 636(b). This case is before the Court on two motions by Defendant Bryan Hardison, who represents himself:[1]

> (1) Amended (Pro Se) Motion for Taint (*Kastigar*-type) Hearing, Filter Protocol, and Sanctions for Intrusion into Attorney-Client Email [Doc. 97], and
>
> (2) Defendant's Motion to Reply and Respond to William A. Roach's Declaration of the U.S.'s Taint Review Process [Doc. 157].

These motions relate to an October 13, 2025 email from former elbow counsel Attorney Laura Davis to Defendant, who was then detained at the Knox County Detention Center. [Doc. 97-2; Doc. 117-5 ¶ 2]. The case agent Detective Brandon Stryker reviewed this email on October 14, 2025, as he reviewed Defendant's jail telephone calls and emails [Doc. 97-2; Doc. 117-5 ¶ 2]. Detective Stryker reported his review of this email to the prosecuting attorney, who took steps to ensure the email remained sequestered and to educate elbow counsel on securing her email

---

[1] On September 11, 2025, the undersigned permitted Defendant Hardison to represent himself, after finding that he knowingly and voluntarily waived his right to counsel [Doc. 51 p. 6]. At Defendant's request, the Court appointed Attorney Laura Davis as elbow counsel [*Id*. at 7]. On November 19, 2025, the undersigned substituted Attorney Mark Brown as elbow counsel for Defendant [Doc. 102 pp. 2–3].

account from monitoring [Docs. 97-1 & 97-2]. The Government subsequently designated a filter attorney and taint-review procedures [Doc. 151 ¶ 2].

Defendant asks the Court to require the Government to prove it did not benefit from the agent's exposure to this email and to sanction the Government in order to "neutralize any prejudice from the Government's exposure to attorney-client email and legal communications" [Doc. 97 p. 1]. He also asks the Court to reconsider its prior ruling denying him hard copies of all his jail email discussing case-related matters [Doc. 157 p. 1].

For the reasons discussed herein, the Court finds Defendant waived any privilege for the October 13 email and any other "case-related email" Defendant sent from the jail because he knew that law enforcement monitored the general jail telephone and email systems. The Court also finds that Defendant was not prejudiced by Detective Stryker's exposure to the October 13, 2025 email between elbow counsel and Defendant. Accordingly, the Court **DENIES** Defendant's motion for sanctions [**Doc. 97**] and his second request for hard copies of all his jail email [**Doc. 157**].

## I.     BACKGROUND

On May 7, 2025, a Grand Jury charged Defendant by Indictment with possession with intent to distribute 280 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count One) and possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine (Count Two) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) [Doc. 8 p. 1]. Defendant was initially represented by a series of attorneys, both court-appointed and retained,[2] but on September 11,

---

[2]     A summary of the history of Defendant's representation by counsel is set out in the Court's Memorandum and Order of March 3, 2026 [Doc. 155 pp. 2–5].

2025, the undersigned permitted Defendant to represent himself and appointed elbow counsel, Attorney Laura Davis, to assist him [Doc. 51 pp. 6–7].

According to Detective Brandon Stryker's October 14, 2025 Report of Investigation, Detective Stryker saw an October 13 email from elbow counsel Laura Davis to Defendant while conducting routine monitoring of Defendant's jail telephone calls and email on October 14, 2025 [Doc. 97-2]. Detective Stryker notified the prosecutor Assistant United States Attorney Keith Hollingshead-Cook and the jail that he viewed the email [*Id.*]. Detective Stryker provided a sworn declaration regarding this incident [Doc. 117-5]. He stated he viewed this email "inadvertently" [*Id.* ¶ 2]. Detective Stryker maintained the email did not discuss the facts of the investigation or prosecution [*Id.* ¶ 3]. Nor did it discuss Defendant's litigation strategy or trial preparations [*Id.*]. Detective Stryker stated that he did not learn information from the email that led to other evidence or that he used to further the investigation of Defendant [*Id.* ¶ 4]. Detective Stryker said he did not provide the email to AUSA Cook or anyone involved in Defendant's investigation or prosecution [*Id.* ¶ 5].

On October 30, 2025, AUSA Cook sent a letter to Defendant attaching a copy of Detective Stryker's October 14 report [Doc. 97-1]. AUSA Cook explained an agent observed an email communication between Defendant and Ms. Davis [*Id.*]. AUSA Cook stated the Government will ensure that no one from the investigation or prosecution of this case will see the email [*Id.*]. AUSA Cook offered to provide a copy of the email to Defendant through a filter team [*Id.*]. He also stated that he "informed Ms. Davis of the ability to designate her email account to the jail as associated with a lawyer so that the email communications with her account are not monitored in the future" [*Id.*].

On November 17, 2025, Defendant moved ("Motion on Exposed Email")[3] for a hearing, creation of filter team protocol, production of materials for the Court's in camera review, and sanctions due to the exposed email [Doc. 97 p. 1].[4] He argues that the "Government's intrusions into attorney[-]client communications implicate[] the Sixth Amendment" [*Id.* at 2]. Defendant acknowledges that "[t]he Sixth Circuit requires a showing of prejudice (or a serious threat thereof) [from the exposure] even if the intrusion was intentional" [*Id.*]. Defendant contends the Court should require the Government "to show its case is untainted by any direct or derivative use of" the exposed, privileged information [*Id.*]. He asks the Court to hold a taint hearing, to establish a filter protocol, to compel in camera inspection of the exposed materials, and to impose remedies or sanctions tailored to "neutralize any prejudice from [the] Government['s] exposure" to the email [*Id.* at 1, 4]. Defendant attached the October 30, 2025 letter from AUSA Cook [Doc. 97-1] and Detective Stryker's October 14, 2025 Report of Investigation [Doc. 97-2] to his motion.

The Government responded in opposition to the Motion on Exposed Email, arguing that Defendant waived any privilege by communicating through the jail's email system, which he

---

[3] On November 12, 2025, Defendant filed a "Supplement Reply" [Doc. 91] to his motion to compel disclosure of a photographic lineup mentioned in the search warrant affidavit. In this reply, Defendant asserted that the Government and its agents are reviewing his telephone calls and email at the jail [*Id.* at 1]. Defendant states that "a lot" of his jail email concerns his defense strategy [*Id.*]. He argued that a detective's review of his defense strategy "caused a structural error that potentially compromised the prosecution's case," and he requested an evidentiary hearing on this matter [*Id.* at 2]. Five days later, Defendant filed the Motion on Exposed Email, raising the matter of the exposed email in detail and with documentary support and legal arguments [Doc. 97]. The Court considers that motion.

[4] The undersigned permitted the untimely Amended (Pro Se) Motion for Taint (*Kastigar*-Type) Hearing, Filter Protocol, and Sanctions for Intrusion into Attorney-Client Email [Doc. 97] because "the circumstances underlying Defendant's motion [Doc. 97] arose after the expiration of the October 23, 2025 motion deadline, and Defendant filed the motion [Doc. 97] likely before receiving the Court's [ruling denying an extension of the motion deadline and requiring any further motions to be accompanied by a motion for leave]" [Doc. 103; *see* Doc. 96 p. 6].

4

knew was monitored, and that Defendant has not and will not suffer any prejudice from the case agent's review of the email [Doc. 117 p. 1]. The Government attached copies of the Knox County Inmate Handbook [Docs. 117-2 & 117-3] and the December 10, 2025 Declaration of Brandon Stryker [Doc. 117-5] to its response.

In reply, Defendant argued that the Government's response confirms that law enforcement accessed communications between he and his "elbow/defense team sent for legal assistance" [Doc. 122 p. 2]. He asserts that regardless of whether the exposed email was sent on the jail's email system, the prosecution may not exploit its knowledge of defense strategy and, thus, "a taint protocol and hearing are necessary to ensure" law enforcement and the prosecution have not directly or derivatively used their knowledge of the exposed email [*Id*.]. Defendant contends the Court should isolate the "disputed material" from the prosecution, require a "taint log" and sworn declarations from all agents and prosecutors, and require the Government to show that all challenged evidence comes from a legitimate, independent source [*Id*. at 3]. He maintains "if prejudice is shown," the Court should impose sanctions such as suppression or disqualification, to neutralize the harm [*Id*.]. Defendant also contends that in advance of the hearing, the Court should protect his communications [*Id*.].

On December 22, 2025, Assistant United States Attorney William A. Roach, Jr., entered a limited notice of appearance in this case [Doc. 129]. AUSA Roach states that he appears for the limited purpose of providing the Court, for its in-camera review, the email between Defendant and elbow counsel that was inadvertently seen by the case agent [*Id*.]. AUSA Roach also moved to file the email at issue under seal "due to [Defendant's] allegation that the document is subject to the attorney-client privilege" [Doc. 130 p. 1]. The motion states the Government disputes this claim of privilege but, nevertheless, and "out of an abundance of caution, the United States has

5

instituted a taint-review process to review the email and file it in camera for the Court's review" [*Id.*]. AUSA Roach asks that the email be sealed, "with the exception that the Government will provide a copy to the [D]efendant and to his elbow counsel" [*Id.*]. The undersigned granted the motion to seal the email [Doc. 132].

On December 29, 2025, Defendant filed a second reply to the Government's response to his Motion on Exposed Email [Doc. 134]. Defendant asserts that even if the agent inadvertently reviewed his email with elbow counsel, "Sixth Circuit precedent does not permit a Government self-certification to end the inquiry" [*Id.* at 2]. In response to the Government's argument that the email was not privileged because Defendant was aware that the jail email system was monitored, Defendant contends that "monitoring for institutional security does not amount to an open door for investigative or prosecutorial use without safeguards" [*Id.* at 3]. He maintains the Court must still determine if the Government exploited the exposure and derived strategic benefit from the communication [*Id.*]. Defendant contends even if the exposure was inadvertent, the Court must still analyze prejudice [*Id.* at 5]. He also argues that a neutral, Court-supervised procedure, rather than a Government-controlled taint team, is necessary to assure that the exposed defense communications are not exploited [*Id.* at 6]. Defendant urges the Court to use a *Kastigar*-style procedure that requires the Government to show that its case is based on independent, untainted sources rather than exposed defense strategy [*Id.* at 7 (citing United States v. Danielson, 325 F.3d 1054, 1059, 1069–73 (9th Cir. 2003)]. Defendant requests an evidentiary hearing to determine the scope and effect of the Government's access to his communications or, alternatively, to implement a neutral filter or taint protocol and require the Government to show its case is not based upon exposure to Defendant's communications [*Id.* at 10].

On January 5, 2026, Defendant responded that he did not object to the Court's in-camera review of the October 13, 2025 email, nor to the sealing of the email, but asked that sealed materials be as limited as possible and that the Court impose a protective filter procedure [Doc. 136 pp. 1–2]. Defendant also asked the Court to require the sworn declarations of the case agent and the filter attorney, addressing in writing (1) "who accessed the email and when;" (2) "whether the email was copied, summarized, or transmitted;" (3) "what firewall exists between any filter personnel and the prosecution team;" (4) "how the Government will ensure no derivative use of the [the] email occurs;" and (5) "whether any investigative steps were taken after the email was observed" [*Id*. at 3]. Defendant also requested a hearing or a briefing schedule addressing the issues of privilege/waiver, intrusion, prejudice/derivative use, and the appropriate remedy [*Id*. at 4].

On February 6, 2026, the Court denied Defendant's requests for an expedited hearing and hard copies of all his jail email [Doc. 148 p. 3–4]. After review of all the filings relating to the exposed email, the Court found that "Detective Stryker viewed a single email[ from elbow counsel to Defendant, ]that [AUSA Roach] the filter attorney . . . disclosed that email to Defendant and elbow counsel[,]" and that "the Government has enacted filter measures to prevent further exposure of the email" [*Id*. at 5]. The Court found Detective Stryker's declaration to be already in the record [*see* Doc. 117-5] but ordered AUSA Roach to provide a sworn declaration describing the "taint-review process" implemented in this case and answering the five questions posed by Defendant [Doc. 148 p. 5]. The Court also permitted Defendant to respond to AUSA Roach's declaration [*Id*. at 6].

On February 20, 2026, AUSA Roach filed his sworn Declaration [Doc. 151]. AUSA Roach describes the taint-review process in this case as him "reviewing one challenged email

between Defendant and his former elbow counsel and providing that email to the Court under seal for the Court's in-camera review" and "instructing the prosecution team not to review the challenged email or use the challenged email in any way" [*Id.* ¶ 2]. Specifically, AUSA Roach said that on December 17, 2025, he asked Detective Stryker via email to have someone not involved in the investigation or case provide a copy of the challenged email to him [*Id.* ¶ 3]. The following day, a Knoxville Police Department ("KPD") detective emailed only AUSA Roach a copy of the challenged email [*Id.* ¶ 4]. On December 22, 2026, AUSA Roach entered a Notice of Appearance in this case, filed a copy of the challenged email under seal for the Court's in-camera review, and emailed a copy of the email to Attorney Mark Brown, Defendant's current elbow counsel [*Id.* ¶¶ 5–6]. AUSA Roach states that to his knowledge, the following people have reviewed the October 13 email: Detective Stryker, Mark Brown, the Court, and himself [*Id.* ¶ 10]. He has not copied the email except to provide a copy to the Court under seal and to Mr. Brown [*Id.* ¶ 11]. AUSA Roach said he has not communicated with the prosecution team about the email or the investigation or prosecution of this case, nor will he [*Id.* ¶ 12]. He states that the lead prosecutor has not reviewed or used the email in any way, that Detective Stryker states in his Declaration that he has not used the email to further the investigation, and that the taint-review process will ensure no derivative use of the email occurs [*Id.* ¶ 13]. AUSA Roach is not aware of any investigative steps being taken after Detective Stryker saw the email and the prosecuting attorney has been told not to review it [*Id.* ¶ 14].

In reply to AUSA Roach's Declaration, Defendant moves the court to compel hard copies of all his case-related legal communications, including those with his investigator and Legal Aid [Doc. 157 p. 1]. He states that after he began representing himself, he exchanged numerous attorney-client emails prior to October 13, 2025 [*Id.* at 2]. Defendant describes a meeting he

Case 3:25-cr-00048-TAV-DCP   Document 160   Filed 03/19/26   Page 8 of 13
PageID #: 996

attended with AUSA Cook and elbow counsel the day after the email at issue [*Id*.]. Despite it being under seal, Defendant discloses the substance of the October 13 email in this paragraph [*Id*.]. Defendant asks the Court to reconsider its prior denial of copies of all case-related email and a hearing, arguing that he "has a good-faith basis to believe [there exists] non-curable prejudicial emails that need to be submitted and proffered to the Court to protect due process" [*Id*. at 3–4].

The Court has reviewed all the filings related to Defendant's objection to Detective Stryker's review of the October 13 email and request for a filter process and sanctions. This matter is now ripe for adjudication.

## II.     ANALYSIS

Defendant alleges that Detective Stryker's review of the October 13, 2025 email sent to Defendant from elbow counsel violated his rights under the Sixth Amendment [Doc. 97 pp. 1–2].[5] In assessing "whether there has been an invasion of the attorney-client privilege in violation of the Sixth Amendment right to effective assistance of counsel," the Court examines the following factors:  (1) whether the government purposely caused the interception of confidential, privileged information, (2) whether the government gained, either directly or indirectly, evidence used in the prosecution from the interception of the information; (3) whether the intercepted

---

[5]     Although Defendant invokes the Sixth Amendment right to counsel as the primary basis for his motion, Defendant is representing himself, and in waiving his right to counsel, he cannot assert a claim of ineffective assistance of counsel. *Holmes v. United States*, 281 F. App'x 475, 480 (6th Cir. 2008) (citing *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008)). Nor can he claim that elbow counsel is ineffective. *Id*. at 480–81 ("Even if standby counsel failed to act in some manner, such failure is an incidental effect of [defendant's] decision to assert his *Faretta* rights, and not the basis of an ineffective assistance of counsel claim."). Nevertheless, Defendant also bases his motion on "the Court's supervisory authority" [Doc. 97 p. 1]. And the adversarial system advanced by the Sixth Amendment is designed to assure fairness in criminal prosecutions. *See United States v. Cronic*, 466 U.S. 648, 655–56 (1984). Thus, the Court analyzes Defendant's claim despite its tenuous legal foundation.

information was used to the defendant's "substantial detriment"; and (4) whether the government learned details of trial preparation through the interception. *United States v. Steele*, 727 F.2d 580, 585 (6th Cir. 1984) (citing *Weatherford v. Bursey*, 429 U.S. 545, (1977)). "Even where there is an intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted." *Id*. (citing *United States v. Morrison*, 449 U.S. 361, 365–66 (1981)). Here, the Court's review of these factors shows that Defendant waived any privilege regarding the email because elbow counsel and Defendant communicated on a platform they knew was monitored and that Defendant suffered no prejudice from Detective Stryker's review of the email.

First, the Court finds neither the Government nor Detective Stryker caused the interception of confidential or privileged information. Detective Stryker inadvertently saw the email from elbow counsel to Defendant on the jail email system while conducting routine monitoring of Defendant's jail communications. As shown by the Government, both Defendant and elbow counsel knew the jail emails were monitored. Defendant twice accepted/acknowledged [Doc. 117-1] the jail's handbook, which informed inmates that the jail email system is monitored [Docs. 117-2 p. 6;[6] Doc. 117-3 p. 6]. Moreover, before members of the public may send an email to an inmate, they must acknowledge a warning that the communications are monitored including that they are "waiving attorney/client privilege" [Doc. 117 p. 2]. Despite these warnings, elbow counsel sent Defendant the October 13 email and did

---

[6] The Knox County Inmate Handbook, revised February 15, 2025, states "[a]ll personal mail and electronic messages are subject to censorship and inspection for contraband or any other substantial governmental interest unrelated to the suppression of expression" [Doc. 117-1 p. 6]. An identical warning is contained in the Knox County Inmate Handbook revised on June 3, 2025 [Doc. 117-3 p. 6]. The handbooks also contain procedures for making unmonitored legal calls and sending legal mail [Doc. 117-2 pp. 4, 6–7; Doc. 117-3 pp. 5, 8]. Defendant accepted both handbooks [Doc. 117-1].

10

not use a "verified privileged account," which would have allowed her to send unmonitored messages, and Defendant replied using the same monitored account [*Id*.]. *See In re FirstEnergy Corp.*, 154 F.4th 431,443 (6th Cir. 2025) ("Voluntarily disclosing the substance of privileged communications to a third party, sure enough, generally waives the attorney-client privilege as to those communications.") (citation omitted); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) (stating the voluntary disclosure of attorney-client information to a third party waives the privilege "because the disclosure runs counter to the notion of confidentiality") (citation omitted).

The Court also finds that the Government gained no direct or indirect evidence from Detective Stryker's observation of the October 13 email. In his declaration, Detective Stryker stated that he did not learn anything from reviewing the email that led to other evidence, nor did he use the information in the email to further the investigation of Defendant [Doc. 117-5 ¶ 4]. Detective Stryker states that he did not provide information from the email to AUSA Cook or anyone at the US Attorney's Office [*Id*. ¶ 5]. AUSA Cook in his October 30, 2025 letter to Defendant states that no one else, aside from Detective Stryker, involved in the investigation or prosecution of the case will review the email [Doc. 97-1]. AUSA Roach stated that he told AUSA Cook and the prosecution team not to review the email [Doc. 151 ¶¶ 2, 14].

The record is devoid of any evidence or even suggestion that the Government used the email to Defendant's detriment. In fact, the Court has no information that they used it at all. Detective Stryker affirmatively states in his sworn declaration that he did not learn anything from his review of the email that led to other evidence, nor did he use information from the email to further the investigation [Doc. 117-5 ¶ 4]. Moreover, having reviewed the email, the Court is

11

unable to discern how its substance could have led to other evidence or in any way furthered the investigation of Defendant.

Finally, the Court finds that the exposed email did not alert the Government to Defendant's trial strategy. Detective Stryker states that the email does not contain a discussion of the facts underlying the investigation or prosecution [*Id.* ¶ 3]. He states that it does not discuss anything related to Defendant's litigation strategy or trial preparations [*Id.*]. The undersigned has reviewed the email in camera, and this review corroborates these statements of Detective Stryker.

In summary, the Court finds that Defendant and elbow counsel waived any privilege by communicating on an email platform that they knew was monitored. Moreover, Defendant himself deliberately exposed the substance of the sealed email in his reply to AUSA Roach's Declaration, which Defendant filed on the public docket [Doc. 157]. The Court declines to require the Government to show that all its evidence comes from sources independent of the October 13 email both because the email includes no defensive strategy or information of evidentiary value and because Defendant himself has tainted the procedures implemented to protect the substance of the email. The undersigned also declines to reconsider its denial of Defendant's request for hard copies of all his case-related email, finding to the extent that any of his email would contain privileged or confidential communications, Defendant waived that confidentiality if he sent the communications on the monitored system. The Court also finds Defendant sustained no prejudice, much less substantial prejudice, from Detective Stryker's review of the October 13 email.

III.    CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

12

(1)     Defendant's Amended (Pro Se) Motion for Taint (*Kastigar*-Type) Hearing, Filter Protocol, and Sanctions for Intrusion into Attorney-Client Email [**Doc. 97**] is **DENIED**;

(2)     Defendant's Motion to Reply and Respond to William A. Roach's Declaration of the U.S.'s Taint Review Process [**Doc. 157**], asking the Court to reconsider its denial of a hearing and hard copies of all case-related email, is also **DENIED**; and

(3)     The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum and Order to Defendant at his place of detention.

**IT IS SO ORDERED**.

ENTER:

Debra C. Poplin
United States Magistrate Judge

13