UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
v.                             )      No.:   3:25-CR-48-TAV-DCP
                               )
BRYAN HARDISON,                )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's *pro se* motion for review of detention order [Doc. 152].[1]  Specifically, defendant appears to move the Court to revoke the Order of Detention [Doc. 143] entered by United States Magistrate Judge Debra C. Poplin on January 15, 2026.  The government filed a response in opposition [Doc. 158].  For the reasons discussed below, defendant's motion [Doc. 152] is **DENIED**.

## I.      Background

Defendant is charged with possession with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1)

---

[1]  Defendant titles his filing as "Motion and Reply to Doc #143 to the Government in Pursuant E; Order of Detention" [Doc. 152].  The Court construes this filing as a motion for review of the detention order entered January 15, 2026 [Doc. 143].  *See United States v. Altiery*, No. 2:13-CR-42-1, 2022 WL 3971106, at *3 (E.D. Tenn. Aug. 30, 2022) ("[C]ourts . . . have liberty to characterize a pro se petitioner's filings in a way that best captures the substance of those filings.").

and 841(b)(1)(B) [Doc. 8, p. 1].[2]  On January 8, 2026, the parties appeared before Judge

Poplin for a detention hearing, and after hearing proof and arguments, she took the matter

under advisement [Doc. 139].  Judge Poplin subsequently found, after weighing the factors

set forth in 18 U.S.C. § 3142(g), that:

> the arguments, proffers, and exhibits presented at the detention hearing, as
> well as the Pretrial Services Report compiled by the United States Probation
> Office ("USPO") and supplemented by Memorandum . . . establish[ed] by
> clear and convincing evidence that [d]efendant is a danger to the community
> and establish[ed] by a preponderance of the evidence that no condition or
> combination of conditions of release w[ould] reasonably assure [d]efendant's
> appearance as required.

[Doc. 143-1, p. 1].  Accordingly, Judge Poplin ordered that defendant be detained pending

trial [*Id.* at 5].

On February 23, 2026, defendant filed the instant motion, requesting that the Court

"impose narrowly tailored conditions rather than pre-trial detention/incarceration [Doc.

152, p. 1].  In support of his motion, defendant contends that the combination of conditions

he proposed, which includes travel restrictions, daily check-ins, electronic monitoring, and

supervision, are adequate to ensure his appearance and the safety of the community [*Id.* at

2].  As to the circumstances surrounding the instant case, defendant asserts that there is no

evidence here of controlled buys, no audio nor video, no buy money, and no pre-recorded

calls of the alleged controlled buys [*Id.* at 4, 7].[3]  Furthermore, defendant submits that there

---

[2]  The indictment also sets forth "special findings" which allege that before defendant
committed the instant offenses, he had a prior conviction for a serious drug felony [Doc. 8, p. 2].

[3]  While defendant submits that there is no evidence of any controlled buys, he also later
asserts that "the alleged controlled buys are unreliable" [Doc. 152, p. 7].

was "no six-photo-line-up" and no "K-9 on the scene" [*Id.*]. Defendant also contends that there are false statements, misleading statements, and omissions in the affidavit, and that the confidential source in this case is unreliable [*Id.*]. Moreover, defendant avers that the government and Magistrate Judge placed too much emphasis on the weight of the evidence, especially when the government provided that defendant's charges are based on the drugs seized at defendant's residence, not the drugs subject to controlled buys, and "newly discovered evidence" undermines the weight of the remaining evidence [*Id.* at 4, 6; *see also id.* at 9].

As to his history and characteristics, defendant argues that he has only one prior conviction, which occurred 10 years ago, and that he served his time for that wrongdoing [*Id.* at 3, 5]. And although he was on probation at the time of the alleged instant offense, defendant asserts that there is no indication that he violated the terms of such probation [*Id.* at 7]. Defendant also submits, despite the Magistrate Judge's findings, that he has an "excellent track record of court appearances" [*Id.* at 3, 5, 7]. Furthermore, defendant asserts that he has presented to the Court family support and community ties, a long-standing connection to Knoxville, Tennessee, as he has lived here all his life, and guaranteed employment [*Id.* at 3]. Finally, defendant contends that there is no evidence that he has access to large amounts of cash or that he has friends outside the country, showing his inability to flee [*Id.* at 8].

On March 10, 2026, the government responded in opposition [Doc. 158], arguing that the Magistrate Judge correctly found that defendant "poses a risk of danger to the

community and a risk of nonappearance, and no conditions reasonably mitigate those risks." In support of this assertion, the government states that defendant's present charges are consistent with his criminal history, which includes two prior felony drug trafficking convictions, instances of fleeing from officers and absconding from probation, and violations of his probation [*Id.* at 1–2]. Therefore, the government asserts, the Magistrate Judge properly concluded that defendant should be detained, and defendant has not raised any new information to refute this conclusion [*Id.* at 2].

## II.    Standard of Review

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  A district court reviews *de novo* a magistrate judge's order of pretrial detention. *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013).  A hearing is not required on a § 3145(b) motion. *See United States v. Walden*, No. 3:24-CR-19, 2024 WL 2121232, at *1 (E.D. Tenn. May 10, 2024) (citation omitted). In this case, the Court does not find it necessary to hold a second hearing.

## III.   Applicable Law

As relevant here, section 18 U.S.C. § 3142(e)(3)(A) provides that:

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an

4

offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .

"This presumption leaves a defendant with the burden to produce evidence that they do not pose a danger to the community or a risk of flight." *United States v. Hughes*, 668 F. Supp. 3d 744, 747 (S.D. Ohio 2023) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). Even if a defendant satisfies his burden to produce, which is not heavy, the presumption favoring detention still remains a factor to be considered among those weighed by the court. *Stone*, 608 F.3d at 945.

When reviewing a magistrate judge's detention order, the Court relies on the four factors set out in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  "If, after a hearing[,] . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e).  "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citation omitted).

## IV.   Analysis

### A.   Timeliness of Motion

Foremost, the Court addresses the timeliness of defendant's motion [Doc. 152].  "A defendant's right to have the court with original jurisdiction review a detention order is waived if the appeal is not taken within fourteen days as dictated by Fed. R. Crim. P. 59(a)." *United States v. Alhallaq*, No. 5:25-CR-309, 2026 WL 177624, at *2 (N.D. Ohio Jan. 21, 2026) (citation omitted).  The Magistrate Judge issued the detention order on January 15, 2026 [Doc. 143].  Defendant's motion, however, was not filed until February 23, 2026, well beyond the 14-day appeal period [Doc. 152].[4]  Thus, defendant's time to seek review of the detention order has passed.

---

[4]  The Court considers that defendant is presently proceeding *pro se* in this matter, and he is mailing filings from the Laurel County Correctional Center.  However, even considering this, defendant's motion is hand-dated for February 17, 2026, which is still well beyond the appeal period [Doc. 152, p. 9].

Given defendant may no longer object to the detention order, such order can only be modified if the Court reopens the detention hearing pursuant to 18 U.S.C. § 3142(f). *Alhallaq*, 2026 WL 177624, at *2. "A detention hearing may be reopened if 1) new information exists that was unknown to the movant at the time of the hearing; and 2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) (citing 18 U.S.C. § 3142(f)(2)(B)). Put differently, "the new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Id.*

Reviewing defendant's instant motion, the Court finds that he does not provide any new information that was unknown to him at the time of the initial detention hearing aside from a scant, vague reference to "newly discovered evidence" [Doc. 152, p. 6]. Accordingly, "[d]efendant [has] waived his right to § 3145(b) review and has failed to present grounds sufficient to reopen the detention hearing under § 314[2](f)." *Alhallaq*, 2026 WL 177624, at *2. Despite these deficiencies, the Court will briefly review the Magistrate Judge's Order.

## B. Rebuttable Presumption

The Court begins with rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3). Given defendant's indictment, probable cause exists to conclude that he violated the Controlled Substances Act, specifically 21 U.S.C. § 841(a)(1) [*See* Doc. 8].

7

*United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (finding that an indictment "is sufficient to establish probable cause" for purposes of the rebuttable presumption). And both counts in the indictment, and their respective penalty statutes, provide for a maximum term of imprisonment of over ten years. *See* 21 U.S.C. §§ 841(b)(1)(A), (B). Therefore, either offense leaves defendant facing the presumption of detention. 18 U.S.C. § 3142(e)(3)(A). Accordingly, defendant bears the burden to produce evidence showing he is not a risk of flight nor a danger to the community.

After review, the Court finds no reason to disagree with the Magistrate Judge's assessment that defendant "minimally rebutted the presumption in § 3142(e)(3)" [*See* Doc. 143-1, p. 2]. And it does not appear that the parties dispute this finding. Thus, the Court turns to the § 3142(g) factors to determine if defendant should be released, keeping in mind that the presumption remains a consideration. *See Stone*, 608 F.3d at 945.

### C.  Section 3142(g) Factors

#### 1.  Nature and Circumstances of the Offense Charged

The nature and circumstances of the offenses charged favor detention. As stated previously, the indictment in this case charges defendant with possession with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) [Doc. 8, p. 1]. Both of these offenses carry penalties of potentially long periods of imprisonment, reflecting the seriousness of the crimes. *See* 21 U.S.C. § 841(b)(1)(A) (providing a penalty of "a term of imprisonment

8

which may not be less than 10 years or more than life"); 21 U.S.C. § 841(b)(1)(B) (providing a penalty of "a term of imprisonment which may not be less than 5 years and not more than 40 years"); *United States v. Dixson*, No. 20-1998, 2021 WL 1502723, at *1 (6th Cir. Mar. 22, 2021) (upholding detention of the defendant and agreeing with the district court that a 10-year term of incarceration "reflected the seriousness of the crime and 'increase[d] the likelihood of flight'").[5]  Further, the Sixth Circuit has stated that "drug trafficking is a serious offense that, in itself, poses a danger to the community[]" and has noted its routine affirmation, "on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence."  *Stone*, 608 F.3d at 947 n.6.  Moreover, crimes involving controlled substances are a specific consideration under 18 U.S.C. § 3142(g)(1).

As to the circumstances surrounding this offense, on May 5, 2025, officers with the Knoxville Police Department's Organized Crime Unit went to defendant's residence to execute a search warrant [Doc. 1, p. 3].  According to Federal Bureau of Investigation Task Force Officer Brandon Stryker, law enforcement knocked on defendant's door and announced themselves, yet no one answered the door [USPO Supplemental Memorandum ("SM"), p. 3].  Therefore, law enforcement forced entry into defendant's residence and

---

[5]  And notably here, as mentioned *supra*, the indictment alleges that before defendant committed the instant offenses, he had a prior conviction for a serious drug felony, which would enhance his potential penalties for the instant offenses.  *See* 21 U.S.C. § 841(b)(1)(A) (providing that "[i]f any person commits such a violation after a prior conviction for a serious drug felony . . . has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"); 21 U.S.C. § 841(b)(1)(B) (providing that "[i]f any person commits such a violation after a prior conviction for a serious drug felony . . . has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years").

gave verbal commands to defendant to reveal himself [*Id.*]. Despite these commands, defendant did not comply [*Id.*]. Law enforcement located defendant inside a bathroom and observed him attempting to flush crack cocaine down the toilet [*Id.*; Doc. 1, p. 3]. Defendant was detained, and law enforcement recovered over 800 grams of crack cocaine, over 60 grams of powder cocaine, over $7,000 in U.S. currency, and drug paraphernalia [SM, p. 3; Doc. 1, p. 3].

Turning to defendant's instant motion, he argues that there is no evidence of controlled buys, a six-photo lineup, or a canine "on the scene" [Doc. 152, pp. 4, 7]. All of these absence-of-evidence arguments appear to relate to the affidavit offered in support of the search warrant in this case [*See* Doc. 115-1, pp. 6–10]. In addition to these arguments, defendant also attacks the search warrant affidavit more explicitly, taking issue with the statements contained therein and supposed omissions as well as the reliability of the confidential source discussed within it [*Id.*]. Ultimately, the Court finds that these arguments are constitutional and evidentiary objections which, as the Magistrate Judge noted, are better suited for pretrial motions challenging the validity of defendant's charges [*See* Doc. 143-1, p. 3 n.2].[6]

The Court further notes that "[n]othing in [§ 3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Indeed, "the § 3142(g)

---

[6] Specifically, defendant appears to contest the validity of the search warrant which led to the search of his residence and arrest. And defendant has already raised this overall issue, and the majority of points he raises in this instant motion, in his untimely suppression motion [Doc. 115], which is presently before the Court in a report and recommendation from the Magistrate Judge [*See* Doc. 145].

analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948); *accord United States v. Boone*, No. 5:25-CR-127, 2025 WL 3033896, at *5 (E.D. Ky. Oct. 30, 2025) (noting that the Bail Reform Act "requires the Court to consider all allegations, both proven and unproven, in its calculus of the defendant's dangerousness"). Thus, the sort of constitutional and evidentiary objections defendant posits here are not the focus.

Accordingly, and after considering the nature and circumstances of defendant's alleged offenses set forth *supra*, the Court finds that this first factor weighs in favor of detention.

### 2. Weight of the Evidence

Next, the Court is to consider the weight of evidence against defendant. 18 U.S.C. § 3142(g)(2). The Court begins by observing that defendant appears to misapprehend what "weight of the evidence" refers to as he emphasizes the government's narrowing of the evidence upon which the charges are based [*see* Doc. 152, p. 4; Doc. 58, pp. 6–7 (noting that defendant is "not charged with distributing drugs during the controlled buys leading up to the search")] and relays that he has "newly discovered evidence that continues to undermine the weight of the evidence" [Doc. 152, p. 6]. However, § 3142(g)(2) "goes to the weight of the evidence of dangerousness, *not* the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (emphasis added) (citations omitted).

11

Thus, the Court turns to the weight of the evidence of dangerousness. Notably, "[t]his factor is somewhat duplicative of § 3142(g)(1) and (3) because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history." *United States v. Burns*, No. 5:26-CR-2, 2026 WL 411732, at * 5 (E.D. Ky. Feb. 9, 2026). As noted previously, defendant faces two drug trafficking charges, which are undeniably dangerous offenses. *See Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) ("It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community."); *United States v. Nemetz*, No. 5:22-CR-92, 2022 WL 3365048, at *3 (E.D. Ky. Aug. 15, 2022) (citation omitted) ("Trafficking . . . cocaine [is an] exceptionally dangerous offense[] that poses[s] a serious risk of harm to the community."). The Court also notes that the alleged quantities of drugs discovered in defendant's residence, over 800 grams of crack cocaine and over 60 grams of powder cocaine, are not insignificant [SM, p. 3]. *See United States v. Asberry*, No. 5:22-CR-10, 2022 WL 3287895, at * 4 (E.D. Ky. Aug. 11, 2022) (noting that the "large quantity of drugs found in [the defendant's] possession at the time of her arrest further increases her risk of danger to the community"). Moreover, manufacturing and distribution paraphernalia, along with a substantial amount of cash, were located in defendant's residence, indicating drug distribution [*Id.*].

12

Next, the Court looks to defendant's criminal history, as outlined in the USPO's Pretrial Services Report ("PSR") and Updated Criminal Record ("UCR"). Foremost, defendant has two felony convictions for drug-related offenses [*see* UCR, pp. 1–3], despite his contention that he only has "one prior conviction" [*See* Doc. 152, p. 3]. As to the first of these felonies, records from the Knox County Court Clerk indicate that defendant allegedly sold 10.1 grams of a substance believed to be crack cocaine within a school zone on December 3, 2003 [UCR, p. 2]. That same day, law enforcement attempted to conduct a traffic stop on defendant, but he did not stop, traveling approximately four miles before losing control of his vehicle [*Id.*]. Defendant was arrested, and a search of his person revealed approximately four ounces of marijuana [*Id.*]. For this conduct, defendant was charged with drug offenses, driving offenses, and evading arrest [*Id.* at 1–2]. Ultimately, defendant was convicted in Knox County Criminal Court of the marijuana-related offenses and sentenced to two years' imprisonment with the Tennessee Department of Corrections ("TDOC") [*Id.* at 1]. *See generally Tolbert*, 2017 WL 6003075, at *5 (citation omitted) ("[T]he court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention").

Defendant was eventually released on probation, but on February 10, 2006, a Violation of Probation was filed [*Id.*]. It was alleged that defendant "violated the conditions of his probation by obtaining new criminal charges[;] failing to report the new arrests to his probation office, failing to provide employment verification; failing to report

13

as directed; unlawfully possessing narcotic drugs; failing to pay probation fees, court costs, and fines; and failing to submit to DNA testing" [*Id.* at 2]. Additionally, defendant's UCR indicates that it appears he absconded from supervision on or about November 16, 2005, until his arrest on or about May 21, 2007 [*Id.*]. On July 19, 2007, defendant's probation was revoked [*Id.* at 2].

As to the second of defendant's felonies, the Affidavit of Complaint provided that on May 16, 2012, law enforcement attempted to conduct a traffic stop on a vehicle [*Id.* at 3]. However, the individual operating the vehicle fled [*Id.*]. During law enforcement's pursuit of the vehicle, they observed someone inside the vehicle throwing out multiple packages. Two packages were later recovered, each containing a substance believed to be crack cocaine, 0.5 grams and 10.1 grams respectively [*Id.*]. After law enforcement was able to stop the vehicle, defendant and two co-defendants were arrested [*Id.*]. Defendant was charged and convicted in Knox County Criminal Court of possession of a Schedule II controlled substance with intent to sell/deliver, and he was sentenced on September 24, 2015, to eight years' imprisonment suspended to the Community Alternatives to Prison Program ("CAPP") [*Id.*].

Less than a year later, on June 20, 2016, a Violation of CAPP was filed, alleging defendant violated the conditions of the program by "failing to obey the law, using an illicit substance, failing to be honest, associating with someone who was using and/or distributing illegal substances, having curfew violations, and failing to pay monthly CAPP fees" [*Id.*]. Defendant was later reinstated to CAPP, but on September 28, 2017, another Violation of

14

CAPP was filed [*Id.*]. This violation alleged that defendant failed to be truthful about where he was residing and failed to reside at his approved residence, which resulted in curfew violations [*Id.*]. Ultimately, on January 25, 2018, it appears that defendant's ability to remain on the CAPP was revoked [*Id.*]. On May 17, 2018, defendant was denied parole due to the seriousness of the offense, and he was ordered to serve the balance of his sentence, which expired on December 8, 2021 [*Id.*]. TDOC records reflect that "defendant received three disciplinary infractions while incarcerated" for an unauthorized financial obligation/transaction, larceny, and defiance [*Id.* 3–4]. Defendant pled guilty to all these infractions [*Id.*].

Defendant also has an extensive criminal history aside from these felony convictions, beginning at age 18 [UCR, pp. 1–4]. These offenses include criminal trespass, evading arrest, simple possession/causal exchange, driving offenses, and reckless endangerment, which defendant pled guilty to in August 2024 [*Id.*].

Ultimately, given the above, the Court finds that the weight of the evidence of dangerousness here weighs in favor of detention. Defendant's felony convictions are both for drug-related activity and trafficking, which the Court has already established is viewed by this Court, as well as the Sixth Circuit, as dangerous. And while defendant appears to argue that his most recent felony conviction is remote in time, defendant's argument is undercut by the fact that defendant was either participating in the CAPP or incarcerated for a large portion of the period between this conviction and his arrest for instant offense [*See* UCR, p. 3]. Additionally, while defendant notes that he has served his time for this felony

15

conviction [*see* Doc. 152, p. 3], this Court is allowed to "consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies," and a defendant's service of his sentence does not change this. *Tolbert*, 2017 WL 6003075, at \*5. Moreover, defendant's emphasis on his service of time for his "wrongdoing" [*see* Doc. 152, p. 3] is marred by his persistent violations of the CAPP, which included "failing to obey the law" [*See* UCR, p. 3].

Finally, the Court notes that, aside from dangerousness, defendant's criminal history is also telling as to the risk of nonappearance. Defendant has been charged with evading arrest three times, and he has pled guilty to such offense twice [*See* UCR, p. 1]. *See United States v. Martin*, No. 2:25-CR-53, 2025 WL 3216647, at \*2 (E.D. Tenn. Nov. 18, 2025) (citations omitted) (noting that courts have recognized that "attempts to evade arrest . . . can bolster a finding of a serious risk of flight"). Additionally, defendant has had a poor track record with probation and other incarceration alternatives, including, as mentioned above, completely absconding from supervision [*Id.* at 1–2]. On top of defendant's criminal history, his risk of nonappearance is further heightened by the penalties he faces for the instant offenses, which is discussed *supra*. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at \*1 (6th Cir. Mar. 18, 2020) (noting that "significant penalties provide a strong incentive to flee").

Considering all the above, the Court finds that the "weight of the evidence" here favors a finding of detention.

16

### 3. History and Characteristics of Defendant

Next, the Court turns to defendant's history and characteristics, considering first defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A).

Defendant is 42 years old and a lifelong resident of Knoxville, Tennessee [PSR, p. 1]. Defendant has limited contact with his parents, but his mother resides in Knoxville [*Id.*]. Defendant has four brothers, two of which appear to reside in Knoxville [*Id.*]. Defendant is single, and he has never married [*Id.* at 2]. He has three children, ages ranging from 17 to 21, who reside with their biological mother [*Id.*]. Defendant graduated high school in 2003 [*Id.*]. As for employment, defendant reports that he has been self-employed as an automotive mechanic, fixing a variety of vehicles [*Id.*]. Defendant submits that his income varies month to month, that his monthly expenses are approximately $1,500 per month, and that he has approximately $1,500 in his bank account [*Id.*].

As to his physical health, defendant is diagnosed with Type 2 diabetes for which he takes an injectable medication [*Id*]. As to mental health, defendant reported that he has no history of mental health treatment or hospitalization, and that he has not been prescribed any psychiatric medication [*Id.*]. Defendant advises that he has not used illegal substances, specifically cocaine and marijuana, in approximately 10 years.

17

As discussed in detail in the previous section, defendant has an extensive criminal history which includes two felony convictions for drug trafficking [*See* UCR, pp. 1–4]. Additionally, the PSR notes that defendant has gang affiliations with the Crips [*see* PSR, p. 2], though defendant's criminal history does not indicate on its face any gang-related offense. Finally, while defendant does not appear to have a record of missing appearances for court proceedings, as he so notes [Doc. 152, pp. 3, 5, 7], he does have a substantial record of evading arrest and violating supervision, which both bear on defendant's risk of nonappearance [*Id.*]. *See supra* Section IV.C.2.

Next, the Court considers subsection (B) of § 3142(g)(3), which provides that a Court is to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." As noted by the government, defendant was on probation for his recent reckless endangerment conviction at the time he committed the alleged instant offenses [*See* Doc. 143-1, p. 4; UCR, p. 4]. *See United States v. Johnson*, No. 5:22-MJ-1144, 2022 WL 2800242, at *4 (N.D. Ohio July 18, 2022) (noting that the fact that the defendant was on parole at the time of the offense "shows that he will disregard conditions the [c]ourt might impose to assure the safety of the community"); *United States v. Smith*, No. 5:22-CR-42, 2022 WL 1538389, at *6 (E.D. Ky. May 16, 2022) (citing 18 U.S.C. § 3142(g)(3)(B)) ("[The] [d]efendant's repeated violations of court-imposed conditions—namely, his repeated participation in new criminal activity while on post-conviction and pretrial release—is an explicit [Bail Reform Act] factor that

18

here weighs heavily in favor of detention on danger grounds."). And while defendant argues that there is no indication that he violated the terms of his state probation by his instant charges [Doc. 152, p. 7], this is not the consideration of § 3142(g)(3)(B).

The Court acknowledges that some of defendant's history and characteristics favor his release, specifically as he notes, his community ties and long-standing connection to Knoxville [Doc. 152, p. 3]. But the Court must also consider defendant's other characteristics which the Court has already discussed thoroughly *supra*, namely defendant's criminal history and his history of violations while on supervision. *United States v. Mason*, No. 1:20-CR-287, 2024 WL 4544332, at *4 (N.D. Ohio Oct. 22, 2024) (stating that while it considered the defendant's family and community support, employment plans, and compliance with his halfway house and house arrest conditions, the court "must also consider [the defendant's] other characteristics, including his criminal history, and his history of parole and supervised release violations"). Additionally, while defendant reiterates that he has "guaranteed employment" were he to be released [Doc. 152, p. 3], defendant fails to address a critical concern raised by the Magistrate Judge. Specifically, the author of the letter presented to the Court, which stated that defendant would have full-time employment with First Choice Tree Service, was unaware of defendant's charges and criminal history [*See* Doc. 143-1, p. 5; *see* Detention Hearing Ex. 4]. And moreover, the owners of such business were also unaware of these facts [Doc. 143-1, p. 5]. Thus, the Court disagrees that defendant would have "guaranteed" employment were he to be released.

19

Considering all the above, the Court finds, on balance, that this factor weighs in favor of detention.

### 4. Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor under § 3142(g), "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[,]" weighs in favor of detention, especially in light of the presumption. 18 U.S.C. § 3142(g)(4); *see United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) ("The court may continue to give the presumption some weight by keeping in mind that Congress has determined 'that drug offenders pose a special risk of flight and dangerousness to society.'" (quoting *United States v. Hare*, 873 F.2d 796, 798–99 (5th Cir. 1989))). Specifically, and as reiterated several times throughout this Memorandum Opinion and Order, drug trafficking is a dangerous offense. *Stone*, 609 F.3d at 947 n.6. And to this point, this is not the first occasion defendant has been charged with a drug trafficking offense [*See* UCR, pp. 1–4]. Additionally, defendant has repeatedly defied court-imposed conditions, even at one point entirely absconding from supervision [*Id.*]. While the Court does consider Ms. Greene, who defendant offered as a third-party custodian if he were to be released, the Court has the same concerns about her ability to serve as a custodian as those expressed by the Magistrate Judge. Namely, despite knowing defendant for approximately 10 years, Ms. Greene's testimony "reflected that she was not fully aware of [d]efendant's activities" [Doc. 143-1, p. 5]. Taking all of this into consideration, the Court finds that this factor weighs in favor of detention.

20

# V. Conclusion

Ultimately, the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of defendant, and the nature and seriousness of the danger to the community all weigh in favor of defendant's continued pretrial detention. The Court is convinced that no conditions or combination of conditions for release would reasonably assure the safety of the community and defendant's appearance for court proceedings. Accordingly, defendant's motion [Doc. 152] is hereby **DENIED**. Defendant shall remain detained pending trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE