UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
v.                            )     No.:   3:25-CR-48-TAV-DCP
                              )
BRYAN HARDISON,               )
                              )
          Defendant.          )

**<u>MEMORANDUM OPINION AND ORDER</u>**

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on January 28, 2026 [Doc. 145]. The R&R addresses defendant's pro se Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 73], Motions for Leave to File Late-Filed Pretrial Motions to Suppress [Docs. 114, 119], and the proposed late-filed Motions to Suppress [Docs. 115, 118]. Defendant filed objections to the R&R [Doc. 150], the government responded [Doc. 154], and defendant replied [Docs. 159, 162]. Accordingly, this matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). Also before the Court are defendant's "Supplemental Motion to Suppress Identification" [Doc. 180] and "Addendum and Supplemental Motion to Suppress" [Doc. 181], which are not addressed by the R&R but raise related legal arguments.

For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 150], **ACCEPT** and **ADOPT** the R&R [Doc. 145] in whole, and **DENY** defendant's motions [Docs. 73, 114, 115, 118, 119, 180, 181].

## I.      Background

The superseding indictment charges defendant with possession with intent to distribute 280 grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count One) and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two) [Doc. 193].[1]  These charges are based on evidence discovered during the execution of a search warrant at 5205 Skyline Drive, Knoxville, Tennessee, on May 5, 2025 [Doc. 1, p. 3].

The Court presumes familiarity with the background set forth in the R&R [*See* Doc. 145, pp. 2–8].  Neither party appears to object to the background set forth in the R&R. Therefore, the Court adopts that background, in relevant part:

> On May 5, 2025, officers with the Knoxville Police Department's ("KPD") Organized Crime Unit ("OCU") executed a search warrant at Defendant Hardison's address.  Based upon the affidavit of KPD Detective Brandon Stryker ("Detective Stryker"), which lists controlled substances seized from Defendant's residence, [Judge Poplin] issued a Criminal Complaint charging Defendant with possession of 280 grams or more of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).
>
> On May 7, 2025, a Grand Jury charged Defendant Hardison by Indictment with possession with intent to distribute 280 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count One) and possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine (Count Two) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

---

[1]  The superseding indictment in this case was filed after Judge Poplin issued the R&R [*See* Docs. 145, 193].  The superseding indictment changed Count Two from charging possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), to charging only the lesser included offense of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) [*Compare* Doc. 8 *with* Doc. 193; *see also* Doc. 195]. The superseding indictment also dropped the forfeiture allegations contained in the original indictment [*Id.*].

2

At Defendant's May 6, 2025[,] initial appearance on the Criminal Complaint, the [magistrate judge] appointed Assistant Federal Defender Jonathan Moffat . . . as counsel, and entered an Order of appointment on May 14, 2025, at Defendant's initial appearance and arraignment on the Indictment. At that time, the Court set a deadline for pretrial motions of June 10, 2025. On June 10, 2025, Attorney Moffatt moved to continue the trial and pretrial motion deadline . . . . The [magistrate judge] granted this motion and extended the pretrial motion deadline to July 17, 2025 . . . . In mid-July 2025, Defendant retained Attorneys Gregory P. Isaacs and Ashlee B. Mathis . . . who . . . subsequently withdrew their Motion for Substitution of Counsel due to their discovery of a potential conflict of interest. Attorney Moffatt, who remained counsel of record, moved to reopen and extend the pretrial motion deadline for four weeks . . . . The Court granted this motion and reopened and extended the pretrial motion deadline to August 14, 2025.

On July 23, 2025, Defendant filed a pro se motion requesting substitute counsel . . . . On August 6, 2025, Attorneys Wade V. Davies and Georgia A. Miller . . . entered a notice of Appearance as counsel of record for Defendant Hardison . . . .

On August 7, 2025, the Court substituted Attorneys Davies and Miller as Defendant's counsel of record. Just days later, on August 11, 2025, Defendant filed a pro se motion seeking a *Franks* hearing and suppression of evidence obtained as a result of the search warrant for his residence . . . . The Court denied the motion, instructing Defendant that he must file all motions through counsel and directing counsel to confer with Defendant about his pro se filing. The Court also granted a trial continuance and extended the pretrial motion deadline to September 15, 2025.

On August 17, 2025, Attorneys Davies and Miller filed a motion to withdraw as counsel, which the Court granted after hearing on August 25, 2026. At the August 25 hearing, Defendant initially expressed his desire to represent himself, but the Court asked that he accept appointed counsel to further discuss his case and take time for thoughtful consideration of his request to proceed pro se. The Court appointed . . . attorney Laura Davis as counsel of record for Defendant.

Shortly after this substitution, Attorney Davis filed an Unopposed Motion to Continue Trial and All Associated Deadlines and a Motion for *Faretta* Hearing. Following a *Faretta* hearing on September 11, 2025, the [magistrate judge] . . . permitted Defendant Hardison to represent himself.

3

The Court also extended the pretrial motion deadline to October 9, 2026. On October 1, 2025, Defendant moved to again extend his pretrial motion deadline to allow him to complete review of discovery with his investigator and to prepare pretrial motions. The Court . . . extended the [pretrial motion] deadline to October 23, 2025. On October 16, 2026, Defendant moved for a sixty-day extension of his pretrial motion deadline to complete review of the pole camera video footage, to review "digital copies of content of four cell phones," and to prepare pretrial motions. The [magistrate judge] denied this sixth request to extend the motion deadline . . . . Throughout the proceedings, the Court extended the pretrial motion deadline five times at Defendant's request. The last deadline for pretrial motions expired on October 23, 2025.

On October 23, 2025, Defendant timely filed a pro se motion to dismiss for lack of subject matter jurisdiction arguing his case is improperly before this Court . . . .

On December 5, 2025, Defendant file a Motion to Leave to File Late Filed Pre-Trial Motion along with his proposed Motion to Suppress Evidence Seized in Violation of the Fourth Amendment in Addition the Defendant Requests for a *Franks* Hearing . . . .

Finally, on December 11, 2025, Defendant filed a Motion to Leave and File Late Filed PreTrial Motion to Suppress Statements Due to Violation of the McNabb Rule Pursuant to Rule 5(a) of the Federal Rules of Criminal Procedure . . . along with his proposed Motion to Suppress Statements Due to Violation of the McNabb Rule . . . .

[Doc. 145, pp. 2–8 (footnotes and citations omitted)].

Upon consideration of the record and the parties' arguments, Judge Poplin has recommended that defendant's motions [Docs. 73, 114, 115, 118, 119] be denied.

## II.     Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers defendant's motions, the government's responses, the R&R, and defendant's objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effect[] as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citation omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) (citations omitted) ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

## III.  Analysis

### A.  Jurisdiction

In the R&R, Judge Poplin summarized defendant's jurisdiction arguments by stating that "[d]efendant contends that because state officials initiated the search and investigation leading to his arrest, his charges should be adjudicated in state court" [Doc. 145, p. 9]. In addressing this argument, Judge Poplin determined that the Court has subject matter

jurisdiction over defendant because his indictment charges violations of federal law [*Id.* at 11].  Judge Poplin noted that district courts of the United States have original jurisdiction over all offenses against the laws of the United States [*Id.* at 9].  Further, Judge Poplin stated that the indictment in this case charges defendant with conspiring to distribute controlled substances in violation of federal law, and drug trafficking is an activity that the federal government may regulate [*Id.*].  Thus, Judge Poplin concluded that "[t]his Court unquestionably has jurisdiction over this case" even though state officials conducted the investigation and search leading to defendant's charges [*Id.* at 9–10].

Next, Judge Poplin addressed defendant's argument that "the state law enforcement officers who arrested [defendant] should have complied with Tennessee criminal procedure and taken him before a state magistrate judge after his arrest" [*Id.* at 10].  Judge Poplin concluded that federal criminal procedure, not state law, applies in this case because a federal criminal complaint initiated defendant's prosecution [*Id.*].  Finally, Judge Poplin found that defendant's "argument that the federal indictment divested his right to challenge the search warrant authorizing the search of his residence" is without merit because defendant and his counsel received notice of the pretrial motion deadline at defendant's May 14, 2025, initial appearance and arraignment [*Id.*].

In his objections to the R&R, defendant asserts that "[t]he magistrate judge is very aware of the clear violation of due process" but misconstrued his argument [Doc. 150, pp. 25, 27].  Defendant contends that he was never charged in state court, which denied him "the opportunity to be heard to contest the probable cause to search the residence" [*Id.*].

6

As such, defendant maintains that he was denied the fundamental right of due process [*Id.*]. Defendant further submits that the affiant "breached" defendant's "rights of equal protection under the 14th Amendment never having a chance to challenge the state search warrant" [*Id.*]. He asserts that no United States Codes were implicated in the state search warrant, and a state proceeding was still pending at the time that jurisdiction was "usurped" into federal court without due process [*Id.* at 27].

The government responds that Judge Poplin properly concluded that this Court has subject matter jurisdiction in this case because "[a] federal district court has exclusive original jurisdiction over 'all offenses against the laws of the United States'" [Doc. 154, p. 5 (quoting 18 U.S.C. § 3231)]. Further, the government responds that the Court has afforded defendant due process, and Tennessee criminal procedure does not apply in federal prosecutions [*Id.*].

In his reply, defendant appears to contend that this Court does not have jurisdiction because the *Younger*[2] abstention doctrine applies [Doc. 159, pp. 3–4]. Specifically, defendant states that "[w]hen a court determines that Younger abstention applies, it may not retain jurisdiction over the case[,]" and "[t]he district court improperly retained jurisdiction in this case, even though it had subject-matter jurisdiction" [*Id.* at 3]. Further, defendant continues to argue that this Court lacks jurisdiction because "the warrant was under state statutes and the warrants w[ere] executed for misdemeanor purposes under [Tennessee Code Annotated] statutes" [*Id.* at 5]. Defendant also maintains that the Court

---

[2] *Younger v. Harris*, 401 U.S. 37, 44 (1971).

7

lacks jurisdiction until it files a proper writ of habeas corpus ad prosequendum, which did not occur, to ensure that transfers are lawfully documented [*Id.* at 2]. He states that removal of prosecution from state to federal court is unauthorized, rendering this case "illegal and void" [*Id.* at 6]. At the same time, however, defendant argues that he was never charged in state court, which denied him the opportunity to challenge the search warrant [*Id.* at 5].

As a threshold matter, "*Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neil v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger*, 401 U.S. at 40–41). Although the *Younger* abstention doctrine "permits abstention when there is an ongoing state criminal prosecution[,]" defendant explicitly stated that he "was never charged in the state denying [him] the opportunity to be heard to contest the probable cause" [*Id.*]. *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017) (citation omitted). Moreover, the record shows that a federal criminal complaint was filed [Doc. 1], resulting in defendant's arrest on May 5, 2025, by authority of a federal arrest warrant [Doc. 2]. Since there is no indication in the record that defendant was charged with an ongoing state criminal prosecution, the Court finds that abstention under the *Younger* doctrine is not applicable here.

Moreover, the Court finds that Judge Poplin correctly determined that this Court has jurisdiction over a criminal case involving a violation of federal law. "Federal district judges have jurisdiction over federal criminal cases." *Carpenter v. Goldsmith*, No. 25-10940, 2025 WL 1316479, at *3 (E.D. Mich. May 6, 2025) (citing 18 U.S.C. § 3231);

8

*see also* 13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE § 3575 (3d ed. 2025) ("Thus district courts always have jurisdiction when a federal offense is charged"). "The federal indictment of [defendant] and his presence in the United States conferred personal jurisdiction in" a criminal case. *Jerdine v. United States*, No. 1:18-CV-1613, 2019 WL 626136, at \*3 (N.D. Ohio Feb. 14, 2019); *see also United States v. Sankey*, Nos. 3:15-CR-92, 3:07-CR-83, 2016 WL 4253985 at \*2 (E.D. Tenn. July 13, 2016) (Guyton, J.) ("Because the Defendant is alleged to have violated a federal law, in this district, the United States District Court for the Eastern District of Tennessee unquestionably has jurisdiction over this case.").

Contrary to defendant's argument that state law enforcement officers should have complied with Tennessee criminal procedure, state law does not apply in this case. *See United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994) ("The fact that Tennessee law 'may . . . require greater protection against searches and seizures than the [F]ourteenth [A]mendment is of no avail to a defendant in federal court, under prosecution for a federal crime.'") (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)).

Additionally, the Court agrees with Judge Poplin's determination that the federal indictment did not divest defendant's right to challenge the state search warrant because defendant retained the right to challenge the warrant in federal court after the indictment was filed. *Cf. United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) ("A 'state search warrant being challenged in a federal court must be judged by federal constitutional standards.'") (quoting *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983)).

9

Federal courts routinely review state search warrants. *See, e.g., United States v. Franklin*, 284 F. App'x 266, 271 (6th Cir. 2008) (holding that a state search warrant was valid in federal court); *United States v. Walton*, 68 F. App'x 591, 593 (6th Cir. 2003) (examining the validity of a state search warrant in a federal prosecution); *United States v. Rogers*, No. 1:06-CR-56, 2006 WL 8439709, at *4 (E.D. Tenn. Oct. 6, 2006) (finding "no fatal infirmity in the [state] search warrant at issue" in a federal prosecution). Since federal courts have the power to review state search warrants, the filing of the federal indictment did not strip defendant of his right to file a pretrial suppression motion.

Moreover, defendant obtained notice of the pretrial motion deadline at his appearance and arraignment on May 14, 2025, giving him ample time to file a pretrial suppression motion challenging the search warrant up until the deadline on October 23, 2025 [*See* Docs. 10, 62].[3] *See* Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."); *see also* Fed. R. Crim. P. 41(h) ("A defendant may move to suppress evidence in the court where the trial will occur[.]"). Thus, the Court finds that the federal indictment did not divest defendant's right to challenge the state search warrant.

For these same reasons, defendant's argument that his due process and equal protection rights were violated due to an inability to contest the state search warrant is without merit [*See* Doc. 150, pp. 25, 27]. Defendant has received due process, having been

---

[3] The filing of the superseding indictment on April 15, 2026, does not change this conclusion [*See* Doc. 193].

given approximately 5 months to file suppression motions challenging the search warrant [*See* Docs. 10, 62].

Defendant also contends that jurisdiction is improper because the state search warrant involved state statutes "for misdemeanor purposes," and no United States Codes were implicated [Doc. 150, p. 27; Doc. 159, p. 5]. However, the issuance of a state search warrant including state statutes does not bar jurisdiction in federal court. *See United States v. Beals*, 698 F.3d 248, 263 (6th Cir. 2012) (noting that "federal, not state, law governs the question of the validity of a [state-issued] search warrant in a federal criminal proceeding") (quoting *United States v. Shields*, 978 F.2d 943, 945 (6th Cir. 1992)); *United States v. Eneff*, No. 7-200-1-CR-W-FGJ, 2009 WL 188531, at *2 (W.D. Mo. Jan. 27, 2009) (declining to suppress evidence obtained from a search warrant based on the fact that the warrant was issued by a state court during a joint state-federal criminal investigation).

Next, defendant's argument that the Court lacks jurisdiction until it files a proper writ of habeas corpus ad prosequendum appears to misconstrue the law related to federal jurisdiction. "A federal writ of habeas corpus ad prosequendum is a court order directing the production of a prisoner to stand trial in federal court." *Ridgeway v. United States*, 558 F.2d 357, 361 (6th Cir. 1977). Moreover, "[a] writ of *habeas corpus ad prosequendum* is necessary to remove a prisoner in order to prosecute him in the *proper jurisdiction* wherein the offense was committed." *United States v. Cooke*, 795 F.2d 527, 530–31 (6th Cir. 1986) (internal quotation marks and citations omitted) (emphasis in original).

11

And although defendant asserts that the removal of prosecution from state to federal court is unauthorized, there is no evidence in the record that this case was removed from state to federal court. Rather, the record shows that defendant was arrested on May 5, 2025, pursuant to a federal arrest warrant [Doc. 2]. In other words, there is no evidence that defendant was transferred from an improper jurisdiction or that he was imprisoned outside the territorial limits of the district. *See Cooke*, 795 F.2d at 530 (noting that a writ of *habeas corpus ad prosequendum* "orders the production of a prisoner outside the territorial limits of the district") (citations omitted) (emphasis in original). As previously mentioned, defendant conceded that he was never charged in state court, which he alleged denied him the opportunity to challenge the search warrant [Doc. 159, p. 5]. For these reasons, the Court maintains proper jurisdiction over this matter because the issuance of a writ of *habeas corpus prosequendum* is improper.

Accordingly, defendant's objections to the R&R's conclusions regarding jurisdiction are **OVERRULED**.

## B.    Timeliness

In the R&R, Judge Poplin summarized defendant's arguments related to the timeliness of his pretrial motions as follows:

> On December 5 and 11, 2025, Defendant filed two motions for leave to file motions to suppress evidence beyond the deadline. Defendant asserts good cause exists to permit the untimely suppression motions because at the time the motion deadline expired, he was still reviewing discovery. He asserts the failure to permit the late suppression motions would greatly prejudice him because he raises issues of constitutional import and suppression of the evidence would eviscerate the Government's case against him. He alleges

12

no other party would suffer prejudice from litigation of the motions at this juncture, nor would the April 21, 2026[,] trial date be affected.

[Doc. 145, p. 12 (citations omitted)].

Ultimately, Judge Poplin concluded that defendant has not shown good cause for the untimely filing of his pretrial motions to suppress [*Id.*]. Specifically, Judge Poplin stated that "the deadline for filing pretrial motions expired on October 23, 2025[,]" and defendant's proposed suppression motions were filed on December 5, 2025, and December 11, 2025, which is more than a month after the expiration of the pretrial motion deadline [*Id.* at 9]. Moreover, Judge Poplin observed that the initial pretrial motion deadline was on June 10, 2025; however, she granted 5 requests by defendant for an extension, twice while defendant was representing himself [*Id.* at 11–12]. In denying defendant's sixth request to extend the pretrial motion deadline, Judge Poplin informed defendant that "if [d]efendant discovered a pretrial motion he could not have previously filed by the deadline, he may move for leave and show good cause for the belated filing" [*Id.*]. Additionally, Judge Poplin stated that the Court informed defendant that the rules would not be relaxed due to his *pro se* status [*Id.* at 13].

Further, Judge Poplin noted that defendant's argument that he needed to complete his review of discovery to determine whether he could file a motion to suppress does not establish good cause [*Id.*]. In particular, Judge Poplin stated that defendant acknowledged that he reviewed pole camera footage with his investigator beginning on September 22, 2025, and although he had not finished reviewing the footage before the pretrial motion deadline expired, he seeks to challenge the affidavit providing the basis for the issuance of

the search warrant that led to his arrest [*Id.*]. She found that the search warrant affidavit is not new information to defendant discovered after the pretrial motion deadline expired [*Id.*]. Judge Poplin also pointed to defendant's pro se Motion for a *Franks* Hearing filed in August 2025, as evidence that defendant was aware of and had access to the search warrant affidavit well before the pretrial motion deadline [*Id.* at 13–14]. She found that defendant acknowledged that he received the search warrant affidavit and documents from elbow counsel prior to September 24, 2025 [*Id.* at 14]. Judge Poplin determined that, based on his motion for a *Franks* hearing, defendant had all the information he needed to file a motion to suppress challenging the search warrant before the pretrial motion deadline [*Id.*].

In the R&R, Judge Poplin also addressed defendant's argument that "he came to the realization that the delay in presentment was a basis for suppressing his statements, while reviewing pole camera footage with his investigator after the expiration of the motion deadline" [*Id.*]. She determined that defendant had all the information needed to file this motion before he began representing himself, and he showed "an awareness of the law relating to this issue . . . because he quoted Federal Rule of Criminal Procedure 5(a)(1) in the supplement to his pro se Motion for a *Franks* Hearing, filed on August 11, 2025" [*Id.* at 15]. Judge Poplin held that defendant failed to demonstrate prejudice amounting to good cause because Rule 12(c)(1) permits the Court to set the pretrial motion deadline, and the Court has an interest in enforcing scheduling deadlines [*Id.*].

In his objections to the R&R, defendant argues that he showed good cause in filing a timely request for an extension of the pretrial motion deadline in October 2025, which

14

was denied [Doc. 150, pp. 1–2].[4]  Defendant alleges that he had insufficient time after electing to proceed *pro se* to properly prepare [*Id.* at 2–3], and the magistrate judge is incorrect in insinuating that he had ample time to investigate his case [Doc. 159, p. 2].  He further alleges that this case was "in limbo" for approximately three weeks, while he awaited a ruling on his requests for an extension of the pretrial motion deadline [*Id.*].  Defendant asserts that the magistrate judge's reliance on his filing of a prior *Franks* motion is erroneous because, under local rules, he could not have filed *pro se* suppression motions while represented by counsel [*Id.*].  Finally, he suggests that the denial of a "justified request for a continuance to raise constitutional issues is a violation if the denial is based on [the Court's] unreasoned and arbitrary need for expediency" [*Id.*].

In its response, the government contends that defendant did not show good cause because he had more than five months between his arraignment on May 14, 2025, and the motion deadline on October 23, 2025, to file his untimely motions to suppress [Doc. 154, p. 6].  The government states that defendant had access to the relevant discovery supporting his motion to suppress during that time, primarily the state search warrant affidavit and pole camera footage [*Id.*].  The government highlights that defendant has first-hand knowledge of the timing of his arrest, statements, and initial appearance, which form the basis for his motion to suppress his post-arrest statements [*Id.* at 6–7].  The government also argues that defendant showed knowledge of the relevant law by citing Federal Rule of

---

[4] In deference to defendant's pro se status, and for clarity, the Court includes all arguments from defendant's objections [Doc. 150], reply [Doc. 159], and sur-reply [Doc. 162] in this section.

15

Criminal Procedure 5(a), a legal ground for his motions to suppress, in his *pro se* filings on August 11, 2025, two months before the pretrial motion deadline expired [*Id.* at 7].

Pursuant to Rule 12(c), the Court may "set a deadline for the parties to make pretrial motions," and a motion is untimely if a party "does not meet the deadline." *See* Fed. R. Crim. P. 12(c)(1), (3). However, the Court may consider the pretrial motion "if the party shows good cause." *Id.* "Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010); *see United States v. Trujillo-Molina*, 678 F. App'x 335, 338 (6th Cir. 2017) ("Good cause is a 'flexible standard' requiring an explanation for both the delay *and* the potential prejudice.") (citation omitted) (emphasis in original). At bottom, "it requires [defendant] to articulate some legitimate explanation for the failure to timely file." *Walden*, 625 F.3d at 965.

Here, the Court set a pretrial motion deadline for October 23, 2025, after extending the deadline 5 times, twice while defendant was representing himself [Docs. 18, 27, 37, 51, 62]. The initial pretrial motion deadline was on June 10, 2025 [Doc. 14, p. 4]. In denying defendant's sixth request for an extension on November 14, 2025, the Court informed defendant that if he "discovers a pretrial motion that he could not have previously filed by the deadline, he may move for leave to file the motion" [Doc. 96, p. 4]. Further, the Court ordered that defendant "must show good cause for the belated filing and must attach a copy of the proposed pretrial motion to his motion for leave" [*Id.*].

16

Defendant filed two motions for leave [Docs. 114, 119] on December 5, 2025, and December 11, 2025, to file untimely suppression motions [*See* Docs. 115, 118]. Upon a careful review of these motions and defendant's objections to the R&R, the Court agrees with Judge Poplin's finding that defendant has not shown good cause for his untimely filing of the motions to suppress [Doc. 145, p. 12]. Specifically, defendant's argument that he had insufficient time after electing to proceed *pro se* to properly prepare does not support the finding of good cause because the Court informed defendant that the rules would not be relaxed due to his *pro se* status and advised defendant of the role of his elbow counsel [Doc. 51, pp. 3–5].

Moreover, the Court granted defendant's "Motion to Proceed Pro-Se to Allow Defendant to Represent Himself" [Doc. 46] on September 15, 2025, giving defendant ample time to prepare and investigate his case prior to the expiration of the pretrial motion deadline on October 23, 2025. And under *Trujillo-Molina*, the Court must consider the reason for the delay. 678 F. App'x at 337. Defendant's assumption that this case was "in limbo" while his extension request was pending does not constitute good cause for failing to meet the pretrial motion deadline [Doc. 159, p. 2]. *See id.* The filing of a motion for an extension is not a free pass to ignore existing deadlines; thus, defendant has not stated a "legitimate explanation for the failure to timely file." *See Walden*, 625 F.3d at 965.

Further, although defendant submits that he does not have the information necessary to file a suppression motion, defendant acknowledged that he has reviewed the pole camera footage with his investigator, and on September 24, 2025, he stated that he had received

17

the search warrant affidavit and documents from his elbow counsel [Doc. 55, p. 1; Doc. 68, p. 2]. Thus, it appears that defendant has had ample time to prepare and file a suppression motion.

As Judge Poplin pointed out, defendant also showed that he could raise suppression issues when he improperly filed a *pro se* motion for a *Franks* hearing while represented by counsel several months prior [*See* Doc. 35; Doc. 145, p. 14]. Defendant showed an awareness of the law relating to this issue before he began representing himself when he quoted Federal Rule of Criminal Procedure 5(a)(1), a legal ground for his motions to suppress, in the supplement to his motion for a *Franks* hearing, filed on August 11, 2025 [*See* Doc. 35-1, p. 1; Doc. 145, p. 15].

Additionally, in defendant's proposed motion to suppress evidence, he argues that the pole camera footage does not support the affidavit's statements that people would come and go from the residence and collect items from the grill before leaving, that he placed items in the grill, or that he left the residence and traveled to the controlled buy and back [Doc. 115, pp. 20, 31]. Defendant acknowledged that he began reviewing the pole camera footage by September 22, 2025, forming the basis for his suppression arguments [*See* Doc. 81, p. 2]. Thus, the Court agrees with Judge Poplin's determination that defendant could have made these arguments prior to the pretrial motion deadline without completing his review of the pole camera footage [*See* Doc. 145, p. 14].

Defendant's argument that he could not file suppression motions while represented by counsel appears to relate to Judge Poplin's denial of a *pro se* motion filed by defendant

18

while he was represented by counsel [*See* Doc. 36], in which the Court stated that the local rules prohibit a party from acting on his own behalf in a case when he is represented by counsel. E.D. Tenn. L.R. 83.4(c). In Judge Poplin's order, she reminded defendant that he "must make all filings through counsel" [*Id.* at 2]. She did not state that he was prohibited from filing a suppression motion or a motion for a *Franks* hearing [*See id.*].

Nevertheless, a lawyer's decision not to file a pretrial motion is insufficient to establish good cause. *See Walden*, 625 F.3d at 965 ("Generally, if the failure to timely file occurred as a result of a lawyer's conscious decision not to file a pretrial motion before the deadline, the party seeking a waiver will not be able to establish good cause."); *see also United States v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010) (affirming a district court's decision that an attorney's failure to file a motion as requested by a defendant is not good cause). In fact, neither a change in counsel nor a defendant's decision to represent himself is sufficient to establish good cause for filing an untimely pretrial motion. *See United States v. Gulley*, 780 F. App'x 275, 283 (6th Cir. 2019). Accordingly, defendant's argument that he was unable to file a timely suppression motion is without merit.

Finally, the Court turns to defendant's argument that the Court's denial of his request for an extension is a violation based on the Court's "unreasoned and arbitrary need for expediency" [Doc. 159, p. 2]. The Court has discretion to consider an untimely pretrial motion to suppress if defendant shows good cause. *See* Fed. R. Crim. P. 12(c)(3). The Court also has "a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases."

19

*United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009). In this case, the Court granted 5 extensions of the pretrial motion deadline to permit defendant to file a motion to suppress challenging the search warrant [Docs. 18, 27, 37, 51, 62]. Accordingly, the denial of defendant's sixth request for an extension was reasonable in light of the Court's interest in managing its docket and ensuring that this case reaches a final resolution. There is no basis for defendant's allegation that the Court exercised a need for expediency at the expense of denying his sixth extension request.

Therefore, the Court agrees that defendant's motions to suppress are untimely, and defendant has not shown good cause to allow these motions. Nevertheless, the Court will address the merits of all of defendant's motions for completeness.

### C.    Merits of Suppression Arguments

Judge Poplin summarized defendant's suppression arguments as follows:

Defendant seeks to suppress evidence seized during the execution of a search warrant at his residence because the affidavit in support of the search warrant fails to provide probable cause. Specifically, he alleges the affidavit fails to provide a nexus between the alleged drug trafficking and the residence. He also contends that the affidavit does not contain information on the reliability and credibility of the two confidential informants, nor does it contain independent police corroboration of the information from the informants. Defendant also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), asserting that the affiant intentionally or recklessly included false information or omitted information that is material to probable cause. Defendant contends the affidavit contains the following false statements: that he put a small item or items on a grill and that officers showed the informant a six-photo lineup. He enumerates the following alleged material omissions: that the confidential informant was untested and biased to avoid criminal liability; that the integrity of the controlled buys was compromised because a female officer was not present to search the confidential informant, whom he surmises was a female; that Defendant lived at the residence; that Officer Jinks, who was involved in the investigation, previously presented false

information in a prior affidavit; that the pole camera does not show customers entering and exiting the residence or Defendant leaving the residence before the two controlled buys; that the officers did not see Defendant carrying items from the residence or placing items in a charcoal grill; the exact dates and times that officers received information from a human source, began electronic surveillance, and conducted the traffic stop of CS-1; information about the training of the drug dog at the traffic stop; and that the pole camera shows CS-1's vehicle leaving the residence and the officers were dispatched to stop it.

[Doc. 145, pp. 16–17 (footnotes and citations omitted)].

### 1.    Credibility of the Confidential Informant

Judge Poplin first addresses defendant's probable cause challenge related to the credibility and reliability of the confidential informants and the alleged lack of police corroboration of the information provided by the informants [Doc. 145, pp. 19–20]. Specifically, Judge Poplin stated that a search warrant affidavit does not need to include information about an informant's reliability if the affidavit sufficiently details a controlled buy supporting the informant's credibility [*Id.* at 19]. Ultimately, Judge Poplin found that "law enforcement conducted multiple controlled buys of crack cocaine from [d]efendant, which substantially corroborates CS-1's information that he or she bought crack cocaine from [d]efendant that was subsequently seized from CS-1's car at the time of the traffic stop" [*Id.* at 19–20].

In his objections to the R&R, defendant raises numerous arguments about the reliability and veracity of the informant's information [Doc. 150, pp. 5, 7, 8, 22].

The government responds that Judge Poplin correctly determined that the affidavit supporting the search warrant in this case demonstrated probable cause because it discussed

controlled buys during which an informant bought cocaine from defendant, "including at least one in which [defendant] traveled directly from the residence . . . to the location of the controlled buy" [Doc. 154, pp. 4, 7].

In his reply, defendant repeats his argument that there was no probable cause to support the affidavit in part due to a lack of informant reliability and independent corroboration of the information provided by the informant [*See* Doc. 159, pp. 11–14].

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (citations and internal quotation marks omitted). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted). Moreover, "[a] magistrate's determination of probable cause is afforded great deference by the reviewing court," *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001), and the "warrant must be upheld as long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing[,]" *United States v. Lee*, 48 F. App'x 184, 186 (6th Cir. 2002) (citation omitted, cleaned up); *see also Illinois v. Gates*, 462 U.S. 213, 235 (1983) (noting that "[t]echnical requirements of elaborate specificity" are not required in evaluating probable cause in a search warrant).

Specifically, "[a]n affidavit is sufficient 'where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a

22

particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate *may* believe that evidence of a crime will be found." *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006) (quoting *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (emphasis in original)). Thus, "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *Id.* (quoting *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004)). "[E]ven a single controlled purchase can be sufficient to establish probable cause to believe that evidence of drug trafficking is present at the purchase location." *United States v. Moore*, 999 F.3d 993, 997 (6th Cir. 2021).

As an initial matter, the Court agrees with Judge Poplin's determination that the search warrant affidavit does not need to include information about the informant's credibility or reliability since it sufficiently details controlled buys supporting the informant's reliability [Doc. 145, pp. 19–20]. *See id.* at 998 ("[A] warrant affidavit need not include such attestations [of the informant's reliability] if it sufficiently details a controlled buy that supports the informant's credibility."); *see also United States v. Gunter*, 266 F. App'x 415, 417–18 (6th Cir. 2008) (finding that the affidavit established the reliability of a confidential informant when the informant participated in controlled purchases away from the residence to be searched).

Nevertheless, the affidavit demonstrates that the informant and defendant likely had previous dealings, supporting the finding of probable cause for the warrant [*Id.* at 18].

23

Specifically, the affidavit alleges that officers conducted a traffic stop, which led to the discovery of a glass crack pipe in the car and a small amount of crack cocaine on the driver [Doc. 115-1, p. 9]. The affiant submits that the driver, who is referred to as "CS-1" in the affidavit, stated that he or she bought the crack cocaine from a "light-skinned, heavyset black male who resides at 5205 Skyline Drive" [*Id.*]. The affiant showed CS-1 a six-person photo lineup including defendant's most recent driver's license photo, and CS-1 identified defendant as the person who he or she bought crack cocaine from and who resided at 5205 Skyline Drive [*Id.*]. Additionally, the affidavit alleges that the affiant was familiar with defendant "from his prior contacts in law enforcement" and knew that defendant "ha[d] a criminal history that includes convictions for cocaine distribution[,]" further supporting a finding that the information from CS-1 was reliable [*Id.* at 8]. *See United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (concluding that the defendant's drug history provided indicia of reliability for the informant's tip). Thus, although the controlled buys eliminate the need for statements supporting the informant's reliability, the informant's identification of defendant from a photo line-up and the affiant's familiarity with defendant's criminal history provide additional evidence of the informant's credibility.

Moreover, despite Judge Poplin's reliance on the controlled buys, defendant argues that these "purported controlled buys lacked fundamental safeguards" which significantly dimmish the reliability of any evidence obtained [Doc. 150, p. 4]. However, the affidavit states that CS-1 "has made at least two controlled and directed crack cocaine purchases from [defendant]" [Doc. 115-1, p. 9]. On both occasions, law enforcement searched CS-1

24

and his or her car for contraband and/or money before and after the buy, told CS-1 to call defendant to set up a meeting to buy crack cocaine, followed CS-1 to the meeting where CS-1 exchanged governmental funds with defendant for a rock-like substance, and then followed CS-1 to another location to obtain the substance [*Id.*]. Throughout the duration of the controlled buys, law enforcement officers "maintain[ed] constant visual surveillance of [defendant] from the time he left the residence at 5205 Skyline Drive until he arrived at the agreed upon location for the crack cocaine transaction" [*Id.*].

On both instances, the rock-like substance tested positive for cocaine base, and CS-1 identified defendant as the person who sold him or her the crack cocaine [*Id.*]. Within 72 hours of applying for the search warrant, the affiant conducted another controlled purchase of crack cocaine from defendant using CS-1 and the same process as previous controlled buys [*Id.* at 9–10]. Thus, just as in *Moore*, where "the affidavit carefully described the steps taken by officers to ensure the [controlled] buy occurred," the affidavit in this case explained the steps officers took to ensure that the controlled buys with CS-1 occurred. *See Moore*, 999 F.3d at 997. Accordingly, the search warrant affidavit in this case "sufficiently details a controlled buy that supports the informant's credibility." *Moore*, 999 F.3d at 998.

Lastly, the fact that CS-1 is unnamed in the affidavit is immaterial. *See United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005) (holding that a tip from an unnamed informant could support a finding of probable cause when "the issuing judge had before him 'additional evidence [that] buttressed the informant's information'") (quoting *United*

25

*States v. Williams*, 224 F.3d 530, 532–33 (6th Cir. 2000)). Defendant has also not demonstrated that Judge Poplin's conclusion, analysis of the relevant case law, or application of the law to the facts of this case is erroneous. Accordingly, defendant's objections on this ground are **OVERRULED**.

### 2. Nexus

Judge Poplin also concluded that the affidavit established a connection between the residence and drug trafficking because officers maintained visual surveillance of defendant as he traveled from the residence to the drug transaction and then back to the residence [Doc. 145, p. 20]. Judge Poplin found that a single instance of a defendant leaving a residence to complete a drug transaction and returning to the residence is enough to find probable cause [*Id.*].

In defendant's objections to the R&R, he argues that the "mere observation that a defendant left his home and later engaged in drug activity is insufficient" to establish a nexus between the residence and the alleged criminal activity [Doc. 150, p. 18]. Defendant also cites *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), for the proposition that while a nexus may be inferred if officers observe a person leave a residence and immediately conduct a drug transaction, "this inference weakens if there [is] no observation of the person returning with the contraband or no other supporting facts" [*Id.*]. But, according to defendant, there is no nexus when officers are alleged to have seen a person leave the residence, immediately conduct a drug transaction, but never return to the residence [*Id.* (citing *United States v. McPhearson*, 469 F.3d 518)]. Defendant alleges that

26

the affidavit "vaguely references short-term visits to the residence as suggestive of drug activity, but it fails to describe any specific behavior linked to contraband or exchanges" [*Id.* at 21]. Defendant also argues that officers never observed him carrying objects from the residence to the car that would indicate drug sales, and the observation of a defendant traveling between his purported residence and the location of a drug transaction, without evidence that drug-related items were transported, does not establish a sufficient nexus [*Id.* at 10 (citing *Westley*, 22-3356)].

The government responds that Judge Poplin properly concluded that the affidavit supports a finding of a nexus in this case, in part due to a controlled buy "in which officers observed the defendant travel directly from the residence to the location where he met a confidential informant and sold cocaine" [Doc. 154, p. 4]. The government further notes that probable cause to search a residence is present where an individual leaves a residence and engages in a drug sale, supporting the finding of a nexus in this case [*Id.* at 7].

In his reply, defendant largely restates his argument that the nexus between the residence and the evidence of criminal activity is vague in part because CS-1 "never stated how long they knew [defendant]" and "[t]he officer did not see [defendant] carrying any objects in his hands from the home to the car that would indicate contraband would be located at the residence" [Doc. 159, p. 8]. Additionally, defendant submits that the pole camera footage does not show him leaving and directly returning to the residence but rather, it shows him returning four hours and 57 minutes later [*Id.* at 9–10].

27

As an initial matter, defendant appears to raise the same arguments he made in support of his suppression motion, in which he argued that the informant did not state that he saw drugs in the residence or saw defendant selling drugs to other people at the residence [Doc. 115, pp. 18–19; Doc. 150, pp. 8, 18].  To the extent he attempts to reargue these same issues addressed in the R&R, his objections are considered general objections that do not sufficiently identify alleged errors in the R&R and will be overruled.  *See Howard*, 932 F.2d at 509.

An affidavit in support of a search warrant "must contain facts that demonstrate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'"  *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *2 (6th Cir. Jan. 6, 2023) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).  The connection—or "nexus"—"between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'"  *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)).  "If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant."  *Id.* (citing *Carpenter*, 360 F.3d at 595).  Moreover, the Sixth Circuit has held that "[e]vidence that one leaves a 'residence, engage[s] in a drug transaction, and then return[s] into the residence' 'plainly demonstrate[s] a sufficient nexus' with the location."  *United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (citations omitted).  There, "the officers' observation of [the

28

defendant] leaving his residence, completing a *single* drug transaction, and returning to a residence was enough for the [Sixth Circuit] to find probable cause to search [the] residence." *United States v. Florence*, 150 F.4th 773, 778 (6th Cir. 2025) (citing *Sanders*, 106 F.4th at 463) (emphasis in original)).

Applying these principles, the Court finds that the affidavit identifies a sufficient nexus between the drug transaction and the residence in this case. As discussed previously, law enforcement conducted at least two controlled buys to confirm that defendant was selling drugs. For both controlled buys, officers "maintain[ed] constant visual surveillance of [defendant]" as he left the residence, drove to the location where the drugs were exchanged, and then drove directly back to the residence [Doc. 115-1, p. 9]. The officers' observation of defendant driving to and from the location of the drug transaction and directly back to the residence, with no stops in between, supports Judge Poplin's finding that there is reliable evidence connecting defendant's drug activity to the residence. *See United States v. Allen*, No. 21-4029, 2023 WL 34235, *4 (6th Cir. Jan. 4, 2023) (finding a sufficient nexus where a detective surveilled the residence and saw the defendant, who was a known drug dealer, leave in an SUV and drive to the controlled buy, and later observed the same SUV outside the residence); *see also United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019) (finding a sufficient nexus where "agents had conducted three controlled buys of cocaine from [the defendant] and observed him drive directly from his condo to the site of the most recent buy").

29

Defendant attempts to distinguish *Sanders* on the grounds that there is no showing of him leaving and returning to the residence in this case; however, the affidavit details the officers' observations of defendant traveling directly to and from the controlled buys [Doc. 115-1, p. 9]. Thus, defendant's argument that the pole camera footage does not show him leaving and directly returning to the residence is immaterial [*See* Doc. 159, pp. 9–10].

Moreover, the affidavit asserts that the affiant "was familiar with [defendant] from his prior contacts with law enforcement and knows that [defendant] has a criminal history that includes convictions for cocaine distribution" [*Id.* at 8]. The affiant's knowledge of defendant's prior involvement in drug trafficking also supports the finding of a nexus between defendant's drug dealing and the residence. *See United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) (determining that multiple cocaine purchases made it reasonable to infer that evidence of drug trafficking would be at the defendant's residence). Finally, the affidavit in this case detailed the affiant's training and experience, demonstrating the basis for his conclusion that evidence of drug trafficking would be at the residence [*Id.* at 8, 10]. *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996).

Accordingly, the facts contained in the affidavit provide probable cause establishing a sufficient connection between the residence and drug trafficking. Thus, defendant's objections on this ground are **OVERRULED.**

### 3. *Franks* Challenge

Additionally, Judge Poplin determined that defendant's *Franks* allegations lack merit [Doc. 145, p. 20]. Specifically, Judge Poplin stated that the information in the

30

affidavit about controlled buys was sufficiently detailed to show a "fair probability" that drug trafficking evidence would be present at the residence [*Id.* at 20–21]. Moreover, Judge Poplin concluded that defendant did not make "the required substantial, preliminary showing that the affidavit contains material omissions to warrant a *Franks* hearing" [*Id.* at 21]. In addressing defendant's *Franks* argument, Judge Poplin asserted that none of the alleged false statements or omissions offered by defendant are critical to the probable cause finding regarding multiple controlled buys [*Id.*].

Throughout his objections to the R&R, defendant contends that there are false statements in the search warrant. Specifically, defendant states: (1) "[t]he pole camera does not show the defendant putting anything in a grill or the exact time and dates of the defendant being observed several times placing small items in a grill"; (2) "[t]ime stamps of observation on video of individuals pulling up and retrieving small items from a grill"; and (3) "[the affiant] put in the affidavit false and misleading statements of what took place at the traffic stop and what was showed to [the informant] [h]e never showed or had a 6 photo-line-up-array" and "there was . . . no K-9 dog at the scene" [Doc. 150, p. 20]. Defendant also alleges that the affidavit omits several facts material to probable cause [*Id.* at 11, 12, 14, 15, 20, 21, 33, 34]. Defendant argues that Detective Phil Jinks is "Giglio impaired" and has presented false and misleading statements in a previous affidavit [*Id.* at 7 (citing *United States v. Knox*, No. 3:19-cr-63)].

The government responds that Judge Poplin properly determined that any allegedly false statements or omissions raised by defendant are immaterial because they do not undermine the facts showing probable cause [Doc. 154, p. 7].

In his reply, defendant largely re-raises his argument that the pole camera footage does not show him leaving or returning to the residence before and after the controlled buys [Doc. 159, p. 10]. Defendant alleges that the purposed six-photo array is "fabricated" and Detective Stryker is "bringing fraud upon the Court" [*Id.* at 9]. Defendant states that he "knows" that no six-photo lineup was shown at the traffic stop, and there was no K-9 at the scene [*Id.*]. Later, however, defendant states that "there [sic] has never been a six-photo array and if you look at the (13) spread its [sic] singling the defendant out and it has a picture of my brother on it if you look at the other people they look nothing like the defendant; also the identified box is not checked" [*Id.* at 17–18]. Defendant also states that "due diligence" disproves the existence of a K-9 at the traffic stop, as there are no audio/video records, dash cam or body cam records, k-9 handler logs, certifications, etc. [*Id.* at 20].

As a threshold matter, defendant has made similar, if not the same arguments in his suppression brief, which Judge Poplin considered and addressed in the R&R [*Compare* Doc. 115, p. 34 ("The pole camera does not show the [defendant] placing something in a charcoal grill.") *with* Doc. 150, p. 20 ("The pole camera does not show the [d]efendant putting anything in a grill or the exact time and dates of the [d]efendant being observed several times placing small items in a grill.")]. *See Dawson*, 2020 WL 109137, at *1

32

("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs."). But defendant does not point to any specific portion of Judge Poplin's analysis of those issues or explain why they are erroneous. *See Miller*, 50 F.3d at 380.

Instead, defendant now continues to fixate on what is allegedly missing from the search warrant. However, the Sixth Circuit has clearly stated that the Court should "value the affidavit as we might those around us . . . [and] ask what good qualities it contains, not 'what it lacks.'" *Sanders*, 106 F.4th at 463 (quoting *Allen*, 211 F.3d at 975) (explaining that "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added")). And the Court may "not [to] scrutinize a warrant affidavit in a 'hypertechnical' or 'line-by-line' manner." *Id.*

Here, the R&R considers the affidavit wholistically and adequately, ultimately concluding that "the information . . . in the affidavit about the controlled buys was sufficiently detailed to suggest that there was a 'fair probability' that evidence of drug trafficking would be found at the residence" [Doc. 145, pp. 20–21].

As the R&R points out, defendant has also failed to make the substantial, preliminary showing required for a *Franks* hearing. Under the *Franks* test, the defendant must (1) make a substantial preliminary showing that specified portions of the affiant's statements are deliberately or recklessly false, and (2) demonstrate that the challenged statements are necessary to a finding of probable cause. *Franks*, 438 U.S. at 171. To require a hearing on this issue, "the challenger's attack must be more than conclusory."

33

*Id.*; *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . . Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

In this case, defendant has not demonstrated that any of the allegedly false statements or omissions are necessary to support a finding of probable cause. Notably, as the R&R points out, defendant's allegation that the pole camera footage does not show defendant returning to the residence before and after the controlled buys is not material because the affidavit provides that the law enforcement officers "maintain[ed] constant visual surveillance of [defendant] from the time he left the residence . . . until he arrived at the agreed upon location for the crack cocaine transaction" and while he returned to the residence [Doc. 115-1, p. 9; Doc. 145, pp. 21–22].

Regarding the six-photo array, defendant has provided no basis for his assertion that it was never shown at the traffic stop or that it was fabricated [*See* Doc. 159, pp. 9, 17–18]. It is also unclear how the alleged inclusion of defendant's brother in the photo-array has prejudiced defendant in any way [*See id.* at 17–18]. And even if the affidavit included an incorrect statement about the inclusion of the photo-array, the Court finds that there is still probable cause for the search warrant based on the controlled buys discussed *supra*.

Defendant also argues that there was no K-9 dog at the scene of the traffic stop involving the informant, and this fabricated information violated *Franks* and misled Judge Poplin [Doc 150, p. 3]. Defendant argues that there are no audio/video records, dash cam

34

or body cam records, k-9 handler logs, certifications, etc. showing that there was a K-9 at the scene [Doc. 159, pp. 9, 20].

On April 18, 2026, the government filed a supplement to its response to defendant's motion *in limine* to exclude testimony from Giglio-impaired officers [Doc. 203], in which the government stated that it learned that the affidavit contained an incorrect statement. Specifically, the government submits that the affidavit incorrectly stated, "A subsequent K9 sniff of the vehicle resulted in the discovery of a glass crack pipe in the vehicle and a small amount of crack cocaine on the person of the driver[,]" and instead of a K-9 sniff, the search was based on consent [*Id.* at 1].

Notwithstanding the incorrect statement in the affidavit, the Court agrees with Judge Poplin's conclusion that probable exists even if details about the traffic stop were removed from the affidavit [Doc. 145, p. 21]. Thus, defendant's argument regarding the K-9 does not provide a meritorious basis for a *Franks* hearing.

Lastly, defendant's argument that Detective Phil Jinks is "Giglio impaired" and has presented false and misleading statements in a previous affidavit does not have any bearing on the present case or on the accuracy of the statements contained in Stryker's affidavit [*See* Doc. 150, p. 7]. Furthermore, any challenge to the officer's credibility is properly addressed through impeachment at trial rather than a motion to suppress.

For all these reasons, defendant's objections on these grounds are **OVERRULED.**

### 4. Post-Arrest Statements

Lastly, Judge Poplin summarized defendant's arguments regarding the suppression of his post-arrest statements as follows:

> Defendant also moves to suppress his statements he made to law enforcement more than six hours after he was arrested on the morning of May 5, 2025, during the execution of the search warrant at his residence and before his initial appearance on his federal charges on May 6, 2025. He argues this delay in presentment violates 18 U.S.C. § 3501(c) and the *McNabb-Mallory* rule. Defendant contends the twenty-eight hours between his arrest and his initial appearance was "unreasonable" delay because the arresting officers could have taken Defendant before a county court at 2:00 p.m. on May 5.

[Doc. 145, p. 22 (citations omitted)].

Ultimately, Judge Poplin found that defendant's motion to suppress his post-arrest statements to law enforcement lacks merit because defendant waived his *Miranda* rights during an interview after the execution of the search warrant [*Id.* at 23].

In his objections to the R&R, defendant alleges that he was detained for more than 28 hours before appearing before a magistrate judge, and this delay was "unreasonable and unnecessary" requiring "exclusion of confessions or statements obtained during the delay" [Doc. 150, p. 28]. Defendant further states that "under the rule announced in the McNabb Mallory Rule . . . [d]istance was reasonable . . . [t]ransportation was available . . . and a magistrate was available that day" [*Id.*]. Defendant suggests that the reason for the delay was "the pre-notification policy" [*Id.*]. Defendant argues that "an internal policy agreed upon by prosecutors and magistrate judges cannot trump the requirements of a federal statue and the Fed. R. Crim. P." [*Id.* at 30].

36

The government responds that Judge Poplin properly concluded that defendant's "motion to suppress his post-arrest statements based on the timing of his initial appearance" is without merit because defendant waived his *Miranda* rights [Doc. 154, p. 7].

In defendant's supplemental reply, he again asserts that the "McNabb Rule" was violated and thus, evidence and testimony should be suppressed [Doc. 162, p. 3]. He continues to state that there was no reason for the delay between his arrest and his appearance before a magistrate judge [*Id.* at 3–4]. Defendant also alleges that, during his interrogation, he invoked his rights, but he still was not taken before a judge without unnecessary delay [*Id.* at 2].

Under Rule 5(a)(1)(A), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ." Fed. R. Crim. P. 5(a)(1)(A). "[D]efendants' confessions [will] be deemed inadmissible at trial 'when obtained during unreasonable presentment delay.'" *United States v. Woodley*, 713 F. App'x 449, 455–56 (6th Cir. 2017) (quoting *Corley v. United States*, 556 U.S. 303, 307 (2009)). "The principle that 'generally rendered inadmissible confessions made during periods of detention that violated the prompt presentment requirement of Rule 5(A)' [is known] as the *McNabb-Mallory* rule." *Id.* at 456 (quoting *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994)). Section 3501(c) modifies the *McNabb-Mallory* rule and creates a six-hour safe harbor under which any delay of six hours or less between arrest and presentment is admissible "if 'made voluntarily and if the weight to be given the confession is left to the jury.'" *Woodley*, 713 F. App'x at 456 (quoting 18

37

U.S.C. § 3501).  If the defendant confesses more than six hours after arrest and before presentment, the Court examines whether the delay in bringing the defendant in front of a judge was "unreasonable or unnecessary" and whether the confession must be suppressed. *Id.* (citing *Corley*, 556 U.S. at 332).

Here, defendant's statements to law enforcement were made more than six hours after his arrest on May 5, 2025, and before his initial appearance on May 6, 2025 [Doc. 118, pp. 2–3].  However, "'waiver of one's *Miranda* rights also constitutes a waiver under *McNabb-Mallory*,' meaning that '[a] valid *Miranda* waiver also waives the prompt judicial warning of one's constitutional rights.'"  *Id.* (quoting *United States v. Barlow*, 693 F.2d 954, 959 (6th Cir. 1982)). The affidavit in support of the criminal complaint in this case states that after the search warrant was executed, "defendant was transported to the KPD OCU office for an interview[,]" defendant was advised of his *Miranda* rights, and "he agreed to speak without legal representation" [Doc. 1, p. 3].  The affidavit further states that during the interview, defendant admitted that 5205 Skyline Drive is his primary residence [*Id.*].  Thus, based on defendant's waiver of his *Miranda* rights and the applicable law, the Court agrees with Judge Poplin's determination that defendant's motion to suppress his post-arrest statements lacks merit.  *See Woodley*, 713 F. App'x at 456.

Moreover, defendant's argument that an "internal policy" caused a presentment delay is conclusory, and defendant does not explain what he means by a "pre-notification policy" [*See* Doc. 150, pp. 28, 30].  The Court finds that defendant's objections on this issue are vague as the Court cannot discern to which part of the R&R defendant objects or

38

the basis for his arguments. *See Miller*, 50 F.3d at 380. Therefore, the Court declines to address these objections in this context.

Accordingly, defendant's objections on this ground are **OVERRULED.**

### D. Remaining Issues

Next, the Court will address a few lingering assertions in defendant's objections to the R&R. First, defendant makes several references to discovery-related issues throughout his objections to the R&R [Doc. 150, pp. 7; Doc. 159, p. 9]. However, these objections are vague and do not offer further analysis or identify any specific alleged error in the R&R, which does not appear to address any discovery-related issues [*See id.*; Doc. 145]. As such, the Court cannot discern to which portion of the R&R defendant objects, or why he believes the magistrate judge's analysis or conclusions are incorrect. *See Miller*, 50 F.3d at 380. Therefore, the Court declines to address these objections in this context.

Second, defendant contends that in the affidavit, "[t]he affiant avers that in late 2024 a human source gave him information that the defendant was selling drugs from the residence[,] which gave him a right to put a pole camera up without judicial authorization or a warrant" [Doc. 150, pp. 3, 13; Doc. 159, p. 14]. Defendant argues that the affiant provides no specific date of when the pole camera was installed [*Id.*]. He states that the pole camera "was able to view into the home in a way not otherwise observable by the public, and installed and set up without a warrant[,]" and it is an unreasonable and unconstitutional violation of his Fourth Amendment rights [Doc. 159, pp. 13–14].

39

However, any alleged false statement in the affidavit related to the pole camera footage is not critical to the finding of probable cause. As discussed *supra*, the controlled buys support a finding of probable cause for the search warrant irrespective of the pole camera footage information contained in the affidavit.

Third, defendant contends that there "has been intentional misconduct and deliberate indifference" as proof of "vindictiveness" against defendant [Doc. 150, p. 23]. Defendant also alleges that he was targeted due to another investigation that had nothing to do with him, and the affiant confirmed that defendant's conduct would not have been on his radar if it was not for this other investigation [*Id.*]. As such, defendant alleges that there is "investigative bias; selective prosecution; and vindictive prosecution" [*Id.*].

The Court finds that defendant's objections in this regard are vague, and defendant does not identify any specific portion of the R&R supporting his position. *See Miller*, 50 F.3d at 380. Moreover, defendant has not provided any analysis demonstrating how officer motive is an appropriate ground for the suppression of evidence [*See id.*].

For all of these reasons, defendant's objections on these grounds are **OVERRULED.**

### E. Supplemental Motions to Suppress

The Court also notes that defendant has supplemental motions to suppress pending that are not encompassed in the R&R [Docs. 180, 181]. The Court has fully reviewed each of these filings and concludes that each raises the same issues as the motions addressed in this R&R [*See id.*]. Accordingly, for the reasons set forth in the R&R and this

memorandum opinion and order, defendant's "Supplemental Motion to Suppress Identification" and "Addendum and Supplemental Motion to Suppress" [Docs. 180, 181] are also **DENIED.**

IV. **Conclusion**

For the reasons above, the Court finds that the recommendations contained in the R&R are correct. Defendants' objections [Doc. 150] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 145] and **DENIES** defendant's motions [Docs. 73, 114, 115, 118, 119, 180, 181].

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE

41