| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:25-CR-48-TAV-DCP |
| | ) | |
| BRYAN HARDISON, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This criminal matter is before the Court on defendant's "Motion to Dismiss for Prosecutorial Misconduct and Vindictive Prosecution" [Doc. 205], to which the government responded [Doc. 207]. Thereafter, defendant filed a "Motion to Dismiss the Indictment in [sic] Pursuant to Multiple Franks Violations in [sic] Pursuant to the 4th Amendment" [Doc. 212], "Motion to Reopen Suppression Litigation, Compel Production and Authentication of Discovery, and For a Franks (Hearing)" [Doc. 214], and "Pro Se Notice of Renewal and Incorporation of Prior Motions and Request for Leave to Supplement Following Superseding Indictment" [Doc. 215]. For the reasons below, defendant's motions [Docs. 205, 212, 214, 215] are **DENIED**.[1]

## I.      Timeliness

In response to defendant's "Motion to Dismiss for Prosecutorial Misconduct and Vindictive Prosecution" [Doc. 205], the government argues that defendant's pretrial

---

[1] Because all of defendant's motions [Docs. 205, 212, 214, 215] raise overlapping issues, the Court addresses all of those motions cumulatively in this memorandum opinion and order.

motion deadline expired on October 23, 2025, and the Court prohibited defendant from filing any untimely pretrial motion without first filing a motion for leave and showing good cause for the late filing [Doc. 207, p. 1]. The government contends that defendant's motion, filed on April 20, 2026, is untimely, and defendant failed to first seek leave to file the motion and/or show good cause for the late filing [*Id.*]. Nonetheless, the government acknowledges that defendant can likely establish good cause for his belated filing based on a recently disclosed inaccuracy in the search warrant affidavit supporting the search warrant [*Id.*]. However, the government argues that defendant has not shown good cause with respect to any other issues in his untimely motion [*Id.* at 2].

The Court finds that all of defendant's pending motions [Docs. 205, 212, 214, 215] are untimely. Pursuant to Rule 12(c), the Court may "set a deadline for the parties to make pretrial motions," and a motion is untimely if a party "does not meet the deadline." *See* Fed. R. Crim. P. 12(c)(1), (3). However, the Court may consider the pretrial motion "if the party shows good cause." *Id.* "Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010); *see United States v. Trujillo-Molina*, 678 F. App'x 335, 338 (6th Cir. 2017) ("Good cause is a 'flexible standard' requiring an explanation for both the delay *and* the potential prejudice.") (citation omitted) (emphasis in original). At bottom, "it requires [defendant] to articulate some legitimate explanation for the failure to timely file." *Walden*, 625 F.3d at 965.

Here, the Court set a pretrial motion deadline for October 23, 2025, after extending the deadline five times, twice while defendant was representing himself [Docs. 18, 27, 37,

2

51, 62].  In denying defendant's sixth request for an extension on November 14, 2025, the Court informed defendant that if he "discovers a pretrial motion that he could not have previously filed by the deadline, he may move for leave to file the motion" [Doc. 96, p. 4]. The Court ordered that defendant "must show good cause for the belated filing and must attach a copy of the proposed pretrial motion to his motion for leave" [*Id.*].

Defendant filed the instant motions on April 28, 2026 [Doc. 205; *see* Doc. 205-1], April 28, 2026 [Doc. 212; *see* Doc. 212-1], and May 1, 2026 [Docs. 214, 215; *see* Docs. 214-1, 215-1], approximately six months after the pretrial motion deadline expired [*See* Doc. 62 (extending pretrial motions deadline to October 23, 2025); Doc. 96 (denying further extension of the pretrial motions deadline)].  *See Cretacci v. Call*, 988 F.3d 860, 865–66 (6th Cir. 2021) (explaining that, under the prison mailbox rule, courts treat pro se prisoner filings, filed through the prison mail system, as filed on the date when the prisoner delivered the notice to prison authorities for mailing).

Additionally, defendant's motions totally disregard the Court's prior order to first seek leave to file an untimely pretrial motion and largely ignore the Court's directive to show good cause for any such untimely pretrial motions [*See* Doc. 96, p. 4].[2]  However, defendant does, in at least some of his motions, mention newly discovered evidence regarding the accuracy of a statement in the search warrant affidavit [*See e.g.*, Doc. 212, p.

---

[2] Although the Court has overlooked defendant's failure to comply with the Court's prior order in this instance, in deference to his pro se status, it will not do so again.  Any further untimely pretrial motions that are not filed in compliance with the Court's prior directive for the defendant to first seek leave from the Court to file such motion and show good cause for the untimely filing [*see* Doc. 96, p. 4] will be summarily denied on that ground.

3

8; Doc. 214, p. 1]. Specifically, defendant has repeatedly raised arguments that the search warrant affidavit contained false statements that there was a K-9 search of a confidential informant's vehicle at a traffic stop that resulted in the confidential informant identifying defendant as a drug dealer [*See e.g.*, Doc. 150, pp. 3, 20; Doc. 159, pp. 10, 20]. On April 18, 2026, a few days before trial was set to commence, the government filed a supplement to a prior filing indicating that it had recently learned that the search warrant affidavit incorrectly stated that a K-9 sniff of the vehicle at the traffic stop occurred, and, rather, the search of the vehicle at the traffic stop was based on consent [Doc. 203, p. 1].

In light of this newly disclosed information regarding an inaccurate statement in the search warrant affidavit, which defendant has previously challenged under *Franks v. Delaware*, 438 U.S. 154 (1978), the Court finds good cause to permit defendant to belatedly raise challenges to the statements in the search warrant relating to the alleged K-9 sniff of the vehicle. Defendant has not, however, shown good cause for any other issues raised in his motions, and those motions [Docs. 205, 212, 214, 215] are therefore **DENIED as untimely** to the extent they raise any grounds for relief beyond a challenge to the statements in the search warrant affidavit regarding an alleged K-9 sniff of a vehicle during a traffic stop.[3]

---

[3] Although the Court denies all other grounds for relief as untimely, the Court will nonetheless briefly address the merits of these arguments, as an alternative basis for denial of the motions.

## II.    *Franks* Issues

### A.    K-9 Search Statement

Turning first to the search warrant affidavit's statement about the K-9 sniff search, which the government now admits was incorrect [*see* Doc. 203], defendant argues that this new information raises serious questions about the truthfulness, completeness, and reliability of the affidavit [Doc. 214, p. 2].  And the discrepancy regarding a K-9 search versus a consent search is material because the affidavit used the traffic stop as support for probable cause [*Id.* at 3, 7].  Specifically, defendant argues that this distinction is important because a K-9 search versus a consent search involves different facts, witnesses, documentation, legal standards, etc. [*Id.* at 5].  Defendant contends that, if a K-9 was not present at the traffic stop, the affidavit created a false impression about how the relevant evidence was discovered [*Id.*].  Defendant asks the Court to review the sufficiency of the affidavit after removing the false K-9 statement [*Id.* at 7; *see also* Doc. 212, p. 8].

The government, on the other hand, argues that this information should not result in the suppression of evidence because the incorrect statement in the affidavit "was not made knowingly, intentionally, or with reckless disregard for the truth, and it was not essential to the probable cause finding" [Doc. 207, p. 2].

As the Court previously explained [*see* Doc. 213, p. 33], under the *Franks* test, the defendant must (1) make a substantial preliminary showing that specified portions of the affiant's statements are deliberately or recklessly false, *and* (2) demonstrate that the challenged statements are necessary to a finding of probable cause.  *Franks*, 438 U.S. at 171.  Further, the Court previously addressed defendant's arguments regarding the

5

statements in the affidavit about the existence of a K-9 search during the traffic stop under the second prong of *Franks* [*See* Doc. 213, p. 35]. Indeed, in that order, the Court acknowledged the government's admission that the statement regarding the K-9 search was inaccurate, but concluded that "probable cause exists even if details about the traffic stop were removed from the affidavit" and therefore "defendant's argument regarding the K-9 does not provide a meritorious basis for a *Franks* hearing" [*Id.*]. Specifically, the Court relied upon the information in the search warrant affidavit regarding the existence of controlled buys of narcotics from defendant as independently establishing probable cause for the search warrant [*Id.* at 21–26, 33–35].

Defendant's arguments in his new motions to dismiss primarily center around the first prong of the *Franks* test, rather than this second prong, on which the Court has already found that a *Franks* hearing is not warranted. Defendant does make conclusory allegations that, without this information (and other challenged information in the affidavit), there is insufficient probable cause for issuance of the search warrant [Doc. 205, p. 6]. Defendant further attempts to rebut the evidence of the controlled buys from the search warrant affidavit, as an independent ground establishing probable cause, by arguing that the government is not charging him with those controlled buys [*Id.* at 7]. But whether the government is currently proceeding with charges against defendant based on the controlled buys is irrelevant to whether the affidavit's information about those controlled buys was sufficient to support a finding of probable cause for a search warrant. Accordingly, the Court finds that defendant has not raised any meritorious ground for revisiting the Court's prior determination that he has not met the required showing under the second prong of the

6

*Franks* test, even considering the newly disclosed inaccuracy. To the extent his motions seek to raise or reopen a *Franks* challenge based on this newly discovered inaccuracy about the K-9 search, they are therefore **DENIED**.

### B. Photo Array Statement

Similarly, in his motions, defendant attempts to reargue his claims regarding the search warrant affidavit's statements regarding a six-photo array shown to the confidential informant [Doc. 205, p. 7; Doc. 212, pp. 1–5; Doc. 214, pp. 1, 4]. But, as with the K-9 search issue, the Court previously addressed this issue and concluded that "even if the affidavit included an incorrect statement about the . . . photo-array, the Court finds that there is still probable cause for the search warrant based on the controlled buys . . ." [Doc. 213, p. 34]. For the same reasons discussed, *supra*, defendant has not raised any meritorious ground for revisiting the Court's prior determination that he has not met the required showing under the second prong of the *Franks* test. Accordingly, to the extent his motions seek to raise or reopen a *Franks* challenge based on this argument, they are **DENIED**.

### III. Discovery

Next, defendant argues that the government has not met its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500(a),[4] Rule 16 of the Federal Rules of

---

[4] The Jencks Act codified *Jencks v. United States*, 353 U.S. 657 (1957), in which the Supreme Court held that a criminal defendant has a constitutional right to inspect, for impeachment purposes, prior statements made to government agents by government witnesses. *See United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) (noting that Congress enacted the Jencks Act

7

Criminal Procedure, and/or the Court's Due Process Protections Act order [Doc. 205, pp. 1–2]. Defendant largely raises vague assertions that material evidence has not been provided, that the government acted with reckless disregard for its obligations, and that he has been prejudiced by the nondisclosure [*Id.* at 3–5, 13]. Defendant appears to assert that some evidence related to the traffic stop discussed *supra* has not been disclosed [*Id.* at 16; Doc. 212, pp. 2–3, 7].

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rather, "in most criminal prosecutions, the *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled." *United States v. Presser*, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988). However, "the government typically is the sole judge of what evidence in its possession is subject to disclosure." *Id.* at 1281.

Here, the government represented in writing that it fully complied with its discovery obligations, and would continue to do so [Doc. 186, p. 1]. The Court relies on this representation in resolving defendant's motions to dismiss.[5] *See Puertas v. Overton*, 168

---

in response to the Supreme Court's decision in Jencks, to codify, and, in some respects, regulate, the Supreme Court's decision).

[5] The Court notes that the time for disclosure under the Jencks Act has not yet passed; however, the Court relies on the government's representation that it has and will continue to comply with its discovery obligations. *See* 18 U.S.C. § 3500(a); *see also United States v. Fletcher*, 295 F. App'x 749, 753 (6th Cir. 2008) ("[A]ny [Jencks Act] materials disclosed prior to trial exceeded the government's obligations under the Act."); *United States v. Reed*, No. 11-20551-53, 2014 WL 12703713, at *2 (E.D. Mich. May 29, 2014) ("The Government will be required, of course, to turn over any statements after their witnesses testify but, until such time, the Government is not mandated by the Constitution or the Jencks Act to produce the statements.").

F. App'x 689, 706 (6th Cir. 2006) ("The Supreme Court has repeatedly held that a defendant can reasonably rely on the prosecution's representation that it has disclosed all *Brady* evidence."); *see also United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (noting that the court is entitled to accept a prosecutor's representations that documents do not contain any *Brady* material); *United States v. Faller*, No. 1:13-CR-29, 2014 WL 12691595, at *5 (W.D. Ky. May 29, 2014) (stating that "the undersigned is entitled to rely on the [government's] representations as it has no reason to believe that the [government] has made any false representations regarding its <u>Brady</u> compliance"); *United States v. Bothra*, No. 2:18-CR-208, 2020 WL 13980286, at *3 (E.D. Mich. June 5, 2020) (denying the defendant's motion to compel discovery where the government represented that it complied with its obligations under *Brady*, the Jencks Act, and Rule 16); *United States v. Kollman*, No. 1:10-CR-44, 2011 WL 6016893, at *3 (W.D. Ky. Dec. 2, 2011) (relying on the government's representations that it would comply with its obligations under *Brady* and *Giglio*).

Furthermore, to "challenge the government's representation that it does not have *Brady* evidence, [the defendant] must do more than speculate that *Brady* material exists." *United States v. Stark*, 758 F. App'x 518, 520 (6th Cir. 2019) (citing *United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016)). Defendant has not identified any alleged exculpatory materials withheld by the government, therefore, his claims are merely speculative.

Accordingly, to the extent that defendant's motions seek relief based on the government's failure to meet its discovery obligations, the motions are **DENIED**.

9

## IV.   Prosecutorial Misconduct and Vindictiveness

Defendant sprinkles various allegations of prosecutorial vindictiveness and/or prosecutorial misconduct throughout his motions.  Defendant alleges that the prosecutor has committed fraud on the court by (1) being complicit in manufacturing evidence (related to defendant's *Franks* arguments) and (2) withholding discovery [Doc. 205, p. 5; Doc. 212, pp. 4, 6].  Defendant further asserts prosecutorial vindictiveness because defendant is exercising his legal rights to challenge evidence and complaining about the search warrant affiant violating policies [Doc. 205, pp. 3, 18].

First, to the extent that defendant alleges prosecutorial misconduct based on his *Franks* and discovery arguments, the Court has addressed these arguments *supra* and determined that they are meritless.  Accordingly, defendant also has not established any prosecutorial misconduct on those same grounds.

Turning to prosecutorial vindictiveness, the Court notes that "the [g]overnment retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quotation omitted).  "'[S]o long as the prosecutor has probable cause . . . , the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion.'" *Id.* at 607 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)) (alternation in original).  A defendant claiming vindictive prosecution must demonstrate "a realistic likelihood of vindictiveness" by showing that "(1) the prosecutor has some stake in deterring the [defendant's] exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable." *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021) (citing *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir.

10

2013)) (citation modified).  Here, defendant fails to show either that the government had a stake in deterring the exercise of his rights or that the prosecutor's conduct was unreasonable.

As to the government's stake in deterring the exercise of defendant's rights, "pretrial motions do not generally provide a sufficient basis for vindictiveness[.]"  *United States v. Zakhari*, 85 F.4th 367, 381 (6th Cir. 2023) (citation omitted).  Rather, "[d]efense counsel routinely file pretrial motions to suppress evidence[,]" and it is not realistic "to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *United States v. Goodwin*, 457 U.S. 368, 381 (1982); *see also United States v. Suarez*, 263 F.3d 468, 479–80 (6th Cir. 2001) (describing the government's burden to respond to pretrial suppression motions as "rather minimal").  Defendant's pretrial motions to suppress evidence and statements are routine pretrial motions [*See* Docs. 115, 118, 180, 181].  While defendants' motions led to the burden of filing a response, the Court finds that these motions are unlikely to "inflict[a] a mortal blow" to the government's ability to prove its case. *See Ladeau*, 734 F.3d at 569.  Further, "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor."  *Suarez*, 263 F.3d at 479–80.  Thus, defendant has not shown a prosecutorial stake in deterring defendant's right to file pretrial motions.

Turning to the second requirement, defendant has not shown that the prosecutor's conduct was unreasonable.  Notably, defendant's initial prosecution could not have been based on his filing of pretrial motions, as those motions were necessarily filed after the start of this prosecution.  To the extent that defendant's arguments can be construed as

11

alleging vindictiveness based on the filing of a superseding indictment, "the mere presence of a superseding indictment bringing additional charges is not sufficient to be presumptively unreasonable." *Suarez*, 263 F.3d at 480. Rather, "a potentially vindictive superseding indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment." *Id.* In this case, the superseding indictment modified Count Two from charging possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), to charging only the *lesser included offense* of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) [*Compare* Doc. 8 *with* Doc. 193; *see also* Doc. 195]. The superseding indictment also dropped the forfeiture allegations contained in the original indictment [*Id.*]. Since the superseding indictment clearly does not add additional charges or substitute more severe charges, and indeed, only includes modifications that benefit defendant, the requirements for vindictiveness are not met.

For the reasons above, defendant failed to demonstrate prosecutorial misconduct or vindictiveness, and, to the extent his motions seek relief based on such, they are **DENIED**.

## V. Renewal of Prior Motions

Finally, defendant seeks to renew all of his prior pretrial motions in this case in light of the filing of the superseding indictment [Doc. 215]. But the superseding indictment, which the Court described supra, does not have any affect on defendant's prior pretrial motions. Accordingly, to the extent defendant renews or re-raises any previously filed and adjudicated pretrial motion, such is denied for the reasons previously set forth on the record denying those motions in the first instance.

12

## VI. Conclusion

Accordingly, defendant's motions [Docs. 205, 212, 214, 215] are **DENIED**. Defendant is hereby on notice that the Court has fully adjudicated these issues addressed herein, and *any subsequent filings seeking to re-raise these same arguments will be summarily denied*.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE